BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Debtor. | Adv. Pro. No. 08-1789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>v.<br><br>DEFENDANTS LISTED ON EXHIBITS A AND B TO DEFENDANTS' NOTICE OF MOTIONS TO DISMISS,<br><br>        Defendants. | Adv. Pro. Nos. listed on Exhibits A and B to Defendants' Notices of Motions to Dismiss |

## TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO
## <u>DEFENDANTS' MOTIONS TO DISMISS</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ......................................................................................................... 2

I.      STANDARD OF REVIEW ........................................................................ 2

II.     THE TRUSTEE HAS STANDING TO BRING THE AVOIDANCE
        ACTIONS ................................................................................................... 3

        A.      The Trustee Has Standing to Recover Customer Property ....................... 5

        B.      The Doctrine of *In Pari Delicto* Has No Application ............................... 7

III.    THIS COURT HAS JURISDICTION TO ADJUDICATE THE
        AVOIDANCE ACTIONS ............................................................................ 8

IV.     THERE HAS BEEN NO VIOLATION OF DEFENDANTS'
        CONSTITUTIONAL RIGHT TO DUE PROCESS ................................... 10

        A.      The Trustee Is Not A Government Actor ................................................ 11

        B.      There Are No Procedural Due Process Concerns .................................... 13

        C.      Defendants Have No Basis for Arguments Related to The
                Trustee's Compensation ........................................................................ 15

V.      THE CURRENT VALUE OF THE CUSTOMER PROPERTY FUND
        HAS NO IMPACT ON THE TRUSTEE'S ABILITY TO BRING
        AVOIDANCE ACTIONS ............................................................................ 17

VI.     THE APPROPRIATE METHOD FOR CALCULATING
        DEFENDANTS' CLAWBACK EXPOSURE HAS BEEN DECIDED ............. 19

VII.    THE PONZI SCHEME PRESUMPTION IS APPLICABLE IN THIS
        CASE .......................................................................................................... 23

        A.      BLMIS Was A Ponzi Scheme ................................................................ 24

        B.      The Ponzi Presumption is Not Limited to Distributions of Equity .......... 26

VIII.   THE COMPLAINTS DO NOT VIOLATE NEW YORK PUBLIC
        POLICY OR STATE LAW ........................................................................ 28

IX.     THE TRUSTEE MAY BRING CLAIMS TO AVOID OBLIGATIONS ........... 30

        A.      SIPA Authorizes the Trustee to Avoid Obligations, and the Trustee
                Has Adequately Pleaded the Obligations to be Avoided ......................... 30

        B.      Defendants Cannot Rely On Inconsistent State and Federal Law to
                Reduce Their Liabilities to the BLMIS Estate ........................................ 31

        C.      Avoiding Obligations is Entirely Consistent With the Trustee's
                Ability to Avoid Transfers ..................................................................... 32

**TABLE OF CONTENTS**

(continued)

X.  THE TRUSTEE HAS ADEQUATELY PLEADED HIS CLAIMS IN
COMPLAINTS WITH MULTIPLE ACCOUNTS ............................................. 33

XI.  THE TRUSTEE HAS ADEQUATELY PLEADED HIS SUBSEQUENT
TRANSFER CLAIMS ......................................................................................... 34

    A.  The Trustee has Adequately Pleaded his Subsequent Transfer
Claims ..................................................................................................... 34

    B.  Subsequent Transferees Have all Available Defenses Under the
Bankruptcy Code and Applicable Law .................................................... 37

XII.  THE TRUSTEE'S DISALLOWANCE OF CLAIMS IS NOT
INCONSISTENT WITH SIPA .............................................................................. 38

XIII.  THE TRUSTEE CAN AVOID TRANSFERS FROM ACCOUNTS HELD
IN THE NAME OF AN IRREVOCABLE TRUST ............................................. 40

XIV.  THE TRUSTEE'S AVOIDANCE ACTIONS AGAINST CHARITABLE
TRUSTS DO NOT VIOLATE THE RELIGIOUS LIBERTY AND
CHARITABLE DONATION ACT OF 1998 ...................................................... 42

CONCLUSION ..................................................................................................................... 43

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aetna Life Ins. Co. v. Lavoie*,
475 U.S. 813 (1986)................................................................................................12

*Am. Sur. Co. of N.Y. v. Sampsell*,
327 U.S. 269 (1946)................................................................................................29

*In re Asia Global Crossing, Ltd.*,
333 B.R. 199 (Bankr. S.D.N.Y. 2005)...................................................................39

*Barclay v. Mackenzie (In re AFI Holding, Inc.)*,
525 F.3d 700 (9th Cir. 2008) .................................................................................27

*Bayou Superfund LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp., LLC)*,
362 B.R. 624 (Bankr. S.D.N.Y. 2007)...................................................................26

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
397 B.R. 1 (S.D.N.Y. 2007)...................................................................................26

*In re Bell & Beckwith*,
93 B.R. 569 (N.D. Ohio 1988)...............................................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................2, 26, 35

*In re Bernard L. Madoff Inv. Sec. LLC*,
424 B.R. 122 (Bankr. S.D.N.Y. 2010)..........................................................4, 20, 21

*In re Bernard L. Madoff Inv. Sec. LLC*,
654 F.3d 229 (2d Cir. 2011), *cert. denied sub nom.* ................................... *passim*

*BFP v. Resolution Trust Corp.*,
511 U.S. 531 (1994)................................................................................................31

*Bogart v. Israel Aerospace Indus. Ltd.*,
No. 09 Civ. 4783 (LAP), 2010 WL 517582 (S.D.N.Y. Feb. 5, 2010).....................5

*Business Guides, Inc. v. Chromatic Commc'n Enterprises, Inc.*,
498 U.S. 533 (1991)................................................................................................16

*Butner v. United States*,
440 U.S. 48 (1979).................................................................................................28

*Campbell v. Computer Task Group, Inc.*,
No. 00 Civ. 9543 (RWS), 2001 WL 815575 (S.D.N.Y. July 19, 2001) ..................3

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Caperton v. A.T. Massey Coal Co., Inc.*,
556 U.S. 868 (2009)............................................................................................12

*Caplin v. Marine Midland Grace Trust Co.*,
406 U.S. 416 (1972)..............................................................................................7

*Cargo Partner AG v. Albatrans, Inc.*,
352 F.3d 41 (2d Cir. 2003)...............................................................................2, 26

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC)*,
439 B.R. 284 (S.D.N.Y. 2010).............................................................................27

*In re Cosmopolitan Aviation Corp.*,
763 F.2d 507 (2d Cir.1985)...................................................................................16

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998)........................................................................................11, 20

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)..................................................................................5

*Diaz v. Paterson*,
547 F.3d 88 (2d Cir. 2008)...................................................................................13

*Dillon v. Axxsys Int'l, Inc.*,
185 F. App'x 823 (11th Cir. 2006) .......................................................................27

*Domenikos v. Roth*,
288 F. App'x 718 (2d Cir. 2008) ..........................................................................32

*Donell v. Kowell*,
533 F.3d 762 (9th Cir. 2008) ..........................................................................22, 23

*In re Dreier LLP*,
429 B.R. 112 (Bankr. S.D.N.Y. 2010) ..................................................................28

*Drenis v. Haligiannis*,
452 F. Supp. 2d 418 (S.D.N.Y. 2006)...............................................................26, 27

*Duffy v. Futter (In re Futter Lumber Corp.)*,
No. 09-73291-478, 2011 Bankr. LEXIS 5024 (Bankr. E.D.N.Y. Nov. 8, 2011) ...................39

*First Fed. Sav. & Loan Ass'n of Lincoln v. Bevill, Bresler & Schulman, Inc. (In re Bevill, Bresler & Schulman, Inc.)*,
59 B.R. 353 (D.N.J. 1986), *appeal dismissed*, 802 F.2d 445 (3d Cir. 1986).........................29

### TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Gottlieb v. Heller*,
   No. 93 CIV. 3081 (LAP), 1994 WL 557092 (S.D.N.Y. Oct. 7, 1994) .....................................16

*Gowan v. Amaranth Advisors L.L.C. et al (In re Dreier LLP)*,
   Adv. Pro. No. 10-03493 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014)...............24

*Gowan v. Patriot Grp., LLC (In re Dreier LLP)*,
   452 B.R. 391 (Bankr. S.D.N.Y. 2011) ...................................................................................26

*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33 (1989) .................................................................................................................10

*Hernandez v. Jones*,
   No. 92 Civ. 2451, 1993 WL 323820 (S.D.N.Y. Aug. 6, 1993) ................................................5

*Hill v. Spencer Sav. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.)*,
   83 B.R. 880 (D.N.J. 1988) ........................................................................................17, 18, 19

*Hill v. Spencer Sav. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.)*,
   94 B.R. 817 (D.N.J. 1989) ................................................................................................17, 18

*IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs.,Inc.)*,
   408 F.3d 689 (11th Cir. 2005) ...............................................................................................36

*In re Int'l Mgmt. Assocs., LLC*,
   No. A06-62966-PWB, 2009 WL 6506657 (Bankr. N.D. Ga. Dec. 1, 2009) ...........................28

*Ivey v. Swofford (In re Whitley)*,
   463 B.R. 775 (Bankr. M.D.N.C. 2012) ...................................................................................6

*In re J.P. Jeanneret Assocs., Inc.*,
   769 F. Supp. 2d 340 (S.D.N.Y. 2011).................................................................................2, 26

*Jacobs v. State Bank of Long Island (In re AppOnline.com, Inc.)*,
   296 B.R. 602 (Bankr. E.D.N.Y. 2003).....................................................................................38

*Jobin v. Lalan (In re M&L Bus. Mach. Co., Inc.)*,
   160 B.R. 851 (Bankr. D. Col. 1993) ........................................................................................5

*Jobin v. Youth Benefits Unlimited, Inc. (In re M&L Bus. Mach. Co., Inc.)*,
   59 F.3d 1078 (10th Cir. 1995) .................................................................................................6

*Kirschner v. Agoglia*,
   476 B.R. 75 (S.D.N.Y. 2012)..................................................................................................9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Lerner v. Fleet Bank, N.A.*,
   318 F.3d 113 (2d Cir 2003)....................................................................................................3

*Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*,
   No 12-1645-bk(L), 2014 WL 103988 (2d Cir. Jan 13, 2014).................................................30

*McHale v. Boulder Capital LLC (In re 1031 Tax Grp. LLC)*,
   439 B.R. 47 (Bankr. S.D.N.Y. 2010)....................................................................................27

*In re Mid Atl. Fund, Inc.*,
   60 B.R. 604 (Bankr. S.D.N.Y. 1986).....................................................................................39

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)...............................................................................................................13

*Natale v. Town of Ridgefield*.
   170 F. 3d 258 (2d Cir. 1999).............................................................................................11, 20

*Picard v. Chais*,
   445 B.R. 206 (Bankr. S.D.N.Y. 2011)..............................................................24, 35, 36, 39

*Picard v. Cohmad Sec. Corp.*,
   454 B.R. 317 (Bankr. S.D.N.Y. 2011).....................................................................24, 27, 39

*Picard v. Conn. Gen. Life Ins. Co.*,
   11 Civ. 7174 (JSR), 2012 WL 1981486 (S.D.N.Y. May 30, 2012).......................................10

*Picard v. Flinn Inv. LLC*,
   463 B.R. 280 (S.D.N.Y. 2011).........................................................................................17, 19

*Picard v. Greiff,*
   476 B.R. 715 (S.D.N.Y. 2012).................................................................................... *passim*

*Picard v. HSBC Bank PLC*,
   450 B.R. 406 (S.D.N.Y. 2011)................................................................................................8

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   721 F.3d 54 (2d Cir. 2013)......................................................................................................8

*Picard v. Katz*,
   11 Civ. 3605 (JSR), 2012 WL 691551 (S.D.N.Y. 2012).......................................................20

*Picard v. Katz*,
   462 B.R. 447 (S.D.N.Y. 2011)...............................................................................................24

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Picard v. Merkin*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) .................................................................24, 25, 35, 36

*Picard v. Merkin*,
    No. 11 MC 0012 (KMW), 2011 WL 3897970 (S.D.N.Y. Aug. 31, 2011) .............................24

*Picard v. Peter Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*,
    458 B.R. 87 (Bankr. S.D.N.Y. 2011) ........................................................................24, 36, 40

*Picard v. Roman*,
    No. 12 Civ. 2318 (JSR), 2012 WL 5816849 (S.D.N.Y. Nov. 13, 2012) ..............................7, 8

*Picard v. Taylor (In re Park S. Sec., LLC)*,
    326 B.R. 505 (Bankr. S.D.N.Y. 2005) ....................................................................................7

*Pickett v. LeClaire*,
    No. 08 Civ. 7291 (PKC), 2009 WL 3320676 (S.D.N.Y. Oct. 13, 2009) .................................3

*In re Ramirez Rodriguez*,
    209 B.R. 424 (Bankr. S.D. Tex. 1997) ...................................................................................6

*Rochin v. California*,
    342 U.S. 165 (1952).................................................................................................11, 20

*Rosenman Family, LLC v. Picard*,
    395 F. App'x. 766 (2d Cir. 2010) .......................................................................................5, 6

*Rosenman Family, LLC v. Picard*,
    401 B.R. 629 (Bankr. S.D.N.Y. 2009) ................................................................................5, 7

*Ryan v. Picard*,
    133 S. Ct. 24 (2012)...........................................................................................................20

*Scheidelman v. Henderson (In re Henderson)*,
    423 B.R. 598 (Bankr. N.D.N.Y. 2010) .................................................................................35

*Scholes v. Lehmann*,
    56 F.3d 750 (7th Cir. 1995) ................................................................................................27

*Schwartz v. Nordstrom, Inc.*,
    No. 94 Civ. 1005 (CSH), 1994 WL 584676 (S.D.N.Y. Oct. 25, 1994)...................................16

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. (In re Madoff Sec.)*,
    No. M-47, 2010 U.S. Dist. LEXIS 81492 (S.D.N.Y. Aug. 6, 2010) .......................................14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*,
No. M-47, 2010 U.S. Dist. LEXIS 3037 (S.D.N.Y. Jan. 11, 2010)..........................................14

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 499
B.R. 416 (S.D.N.Y. 2013)................................................................................... *passim*

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
490 B.R. 46 (S.D.N.Y. 2013)............................................................................8, 9, 10

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
No. 12 Misc. 115 (JSR) (S.D.N.Y. Feb. 12, 2013), ECF No. 435............................9

*Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*,
234 B.R. 293 (Bankr. S.D.N.Y. 1999)....................................................................35

*Sedona Corp. v. Ladenburg Thalman & Co.*,
No. 03 Civ. 3120 (LTS), 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) ...................32

*Sender v. Buchanan (In re Hedged-Invs. Assocs., Inc.)*,
163 B.R. 841 (Bankr. D. Col. 1994) ........................................................................6

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
379 B.R. 5 (Bankr. E.D.N.Y. 2007)........................................................................35

*Soberal-Perez v. Heckler*,
717 F.2d 36 (2d Cir. 1983)......................................................................................13

*Stern v. Marshall*,
131 S. Ct. 2594 (2011)......................................................................................8, 10

*Tese-Milner v. Beeler (In re Hampton Hotel Investors, L.P.)*,
289 B.R. 563 (Bankr. S.D.N.Y. 2003) ......................................................................7

*Tumey v. Ohio*,
273 U.S. 510 (1927)................................................................................................12

*United States v. Gaines*,
295 F.3d 293 (2d Cir. 2002)......................................................................................4

*United States v. James Daniel Good Real Prop.*,
510 U.S. 43 (1993)..................................................................................................13

*Universal Church v. Geltzer*,
463 F.3d 218 (2d Cir. 2006)....................................................................................42

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

*Velvel v. Picard*,
    133 S. Ct. 25 (2012) ...................................................................................20

*Weisman Celler Spett & Modlin, P.C. v. Trans-Lux Corp.*,
    No. 12 Civ. 5141 (JMF), 2012 WL 5512164 (S.D.N.Y. Nov. 14, 2012) .................................3

*Withrow v. Larkin*,
    421 U.S. 35 (1975) ...................................................................................12

*Wolff v. McDonnell*,
    418 U.S. 539 (1974) ..................................................................................11

**STATUTES**

11 U.S.C. § 502(d) ..................................................................................9, 18, 38, 39

11 U.S.C. § 544 ......................................................................................30, 31, 40

11 U.S.C. § 544(a) ...................................................................................31

11 U.S.C. § 548 ......................................................................................6, 31, 39

11 U.S.C. § 548(a) ...................................................................................31

11 U.S.C. § 548(a)(1) ................................................................................31, 22

11 U.S.C. § 548(a)(1)(A) .............................................................................26, 27

11 U.S.C. § 548(a)(2) ................................................................................42

11 U.S.C. § 548(c) ................................................................................... *passim*

11 U.S.C. § 550 ......................................................................................39

11 U.S.C. § 550(a) ...................................................................................35

11 U.S.C. § 550(b) ...................................................................................37

11 U.S.C. § 551 ......................................................................................39

15 U.S.C. § 78ccc(a)(1) ..............................................................................11

15 U.S.C. § 78eee(b)(4) ..............................................................................13

15 U.S.C. § 78fff .....................................................................................12, 38

15 U.S.C. § 78fff-1 ...................................................................................4, 12

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

15 U.S.C. § 78fff-1(a) .................................................................................................30

15 U.S.C. § 78fff-2 .....................................................................................................12

15 U.S.C. § 78fff-2(b)(2) ............................................................................................21

15 U.S.C. § 78fff- 2(c)(1) ...........................................................................................18

15 U.S.C. § 78fff-2(c)(3) ....................................................................................... *passim*

15 U.S.C. § 78fff-3 ...............................................................................................12, 33

15 U.S.C. § 78fff(b) ......................................................................................4, 30, 31

15 U.S.C. § 78*lll*(4) ......................................................................................................5

N.Y. C.P.L.R. § 5205 .................................................................................................40

N.Y. C.P.L.R. § 5205(c) ............................................................................................40

N.Y. C.P.L.R. § 5205(c)(5).....................................................................................40, 41

N.Y. Debt. & Cred. Law § 273 ..................................................................................31

N.Y. Debt. & Cred. Law § 275 ..................................................................................31

N.Y. Debt. & Cred. Law § 276 ..................................................................................26

U.C.C. § 8-503, cmt.1 (2009) ....................................................................................29

**RULES**

Fed. R. Civ. P. 8 .........................................................................................................35

Fed. R. Civ. P. 8(a)(2).................................................................................................36

Fed. R. Civ. P. 11 .......................................................................................................16

Fed. R. Civ. P. 12(b) ..................................................................................................30

Fed. R. Civ. P. 12(b)(1)............................................................................................2, 3

Fed. R. Civ. P. 12(b)(2)............................................................................................2, 3

Fed. R. Civ. P. 12(b)(6)............................................................................................2, 3

Fed. R. Civ. P. 25(a) ....................................................................................................1

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

**OTHER AUTHORITIES**

28 C.F.R. § 9.9(c)......................................................................................................................12

5 *Collier on Bankruptcy* ¶ 548.03[4] (16th ed. 2013)....................................................................31

Amended Standing Order of Reference, *In the Matter of Standing Order of Reference Re:*
  *Title 11,*
  12 Misc. 32 (S.D.N.Y. Feb. 1, 2012) ......................................................................................10

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aa *et seq*. ("SIPA") and the estate of Bernard L. Madoff ("Madoff"), submits this memorandum of law in opposition to the Motions to Dismiss (the "Opposition") filed by Defendants (collectively, the "Motion") purportedly represented by Becker & Poliakoff LLP[1] and listed on Exhibits A and B attached to the Notice of Motions to Dismiss ("Defendants"), in which Defendants move this Court to dismiss the complaints ("Complaints") filed by the Trustee seeking to avoid and recover transfers of fictitious profits made by BLMIS to or for the benefit of Defendants.

## PRELIMINARY STATEMENT

Defendants' Motion is an attempt to re-litigate issues previously briefed and decided in this proceeding.  The Motion raises no new legal issues and instead merely rehashes arguments previously made and rejected by this Court, the District Court, and the United States Court of Appeals for the Second Circuit.  Though Defendants argue 14 grounds for dismissal, not one provides any basis for the relief they seek.  Among other things, Defendants attempt to revisit issues related to jurisdiction, standing, and the calculation of net equity, all of which have been long-settled.  They even assert that BLMIS was not a Ponzi scheme, contrary to numerous decisions in this SIPA proceeding.

---

[1] Defendants' counsel has not been diligent in informing this Court and the Trustee with respect to exactly whom she represents.  For example, in at least 13 adversary proceedings, counsel has filed the Motion on behalf of deceased defendants. *See, e.g.,* Adv. Pro. Nos. 10-04362; 10-04397; 10-04400; 10-04406; 10-04748; 10-04809; 10-04826; 10-04914; 10-04920; 10-05051; 10-05105; 10-05133; 10-05154.  In all of these actions, counsel has neglected to abide by Rule 7025 of the Federal Rules of Bankruptcy Procedure and Rule 25(a) of the Federal Rules of Civil Procedure and has not informed the Court regarding her authority to represent these Defendants.  In addition, Ms. Chaitman has filed the Motion on behalf of at least one Defendant that she does not represent, namely Lillian M. Sage in Adv. Pro. Nos. 10-04362 and 10-04400.  For the avoidance of confusion, attached hereto as Appendix A is a list of the 128 avoidance actions to which this Opposition applies.

Because there are no plausible bases for Defendants to succeed on the "merits" of their Motion, their clear purpose is to further delay and hinder the Trustee's avoidance and recovery of fictitious profits for Madoff's victims. The inference to be drawn is that Defendants are hoping to use this delay as a means to continue utilizing, and potentially depleting, assets which should otherwise be returned to the estate for equitable distribution.[2] The Motion should be denied in its entirety.

## ARGUMENT

### I.    STANDARD OF REVIEW

Defendants have moved under Federal Rules of Civil Procedure 12(b)(1), (2) and (6). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a cause of action for "failure to state a claim upon which relief can be granted." In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court "must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *In re J.P. Jeanneret Assocs., Inc.,* 769 F. Supp. 2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 44 (2d Cir. 2003)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). The only issue on a motion to dismiss is whether the plaintiff has adequately pleaded his claims. To do so here, the Trustee is not required to plead detailed factual allegations, but rather must simply plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

---

[2] It appears that certain Defendants have already disposed of assets. Defendants' counsel is currently involved in an action brought by James Greiff, a former client who remains a defendant in these proceedings. Mr. Greiff, now represented by different counsel, alleges that a lawyer with Becker & Poliakoff advised him to transfer assets to his wife, which he did, to avoid paying money to the Trustee. *Greiff v. Becker & Poliakoff,* No. 13-21888-CA (Fla. Cir. Ct. June 20, 2013). A copy of the complaint is annexed hereto as Exhibit 1 to the Declaration of Nicholas J. Cremona dated January 17, 2014 (the "Cremona Declaration").

Moreover, for a motion to dismiss under Rule 12(b)(6), the moving party has "a substantial burden" to demonstrate that "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Campbell v. Computer Task Group, Inc.*, No. 00 Civ. 9543 (RWS), 2001 WL 815575, at *2 (S.D.N.Y. July 19, 2001). In other words, Defendants, as the moving party carry the burden of demonstrating how the Trustee's allegations are deficient and require dismissal. *Pickett v. LeClaire,* No. 08 Civ. 7291 (PKC), 2009 WL 3320676, at *1 (S.D.N.Y. Oct. 13, 2009).

Defendants also move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, but in the absence of discovery or an evidentiary hearing, the plaintiff "need only make a prima facie showing that jurisdiction exists and venue is proper." *Weisman Celler Spett & Modlin, P.C. v. Trans-Lux Corp.,* No. 12 Civ. 5141 (JMF), 2012 WL 5512164, at *1 (S.D.N.Y. Nov. 14, 2012).[3]

Defendants cannot meet their burden under Rules 12(b)(1), (2), or (6), and in fact raise issues that already have been fully adjudicated and decided, or are plainly not ripe for consideration on a motion to dismiss, as explained further below. The Motion lacks merit and should be denied.

## II.    THE TRUSTEE HAS STANDING TO BRING THE AVOIDANCE ACTIONS

Defendants' argument, which is inconsistent with settled authority, is that the Trustee lacks standing to bring avoidance actions, including those brought against Defendants herein. This argument is contrary to the fundamental purposes of SIPA, and the statutory authority it grants to the Trustee. The Trustee's standing emanates from SIPA, which provides that the

---

[3] Defendants also move under Federal Rule of Civil Procedure 12(b)(1), which provides for dismissal for "lack of subject matter jurisdiction." A Rule 12(b)(1) motion is decided under substantially the same standard as a motion to dismiss under Rule 12(b)(6). *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir 2003).

Trustee has the general powers of a bankruptcy trustee and the authority to conduct a SIPA liquidation proceeding "in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of title 11."[4]  In addition, SIPA § 78fff-2(c)(3) expressly incorporates the Bankruptcy Code's avoidance provisions and authorizes a SIPA trustee to recover any fraudulent transfers made by the debtor, including those made to customers.[5]

Defendants also fail to inform this Court that Judge Rakoff has already determined in this very proceeding that the Trustee has standing to bring avoidance actions to recover customer property, thus defeating Defendants' entire argument.  *See Picard v. Greiff,* 476 B.R. 715, 728 (S.D.N.Y. 2012) (stating "the Trustee may . . . avoid those fraudulent transfers of customer property for distribution in accordance with SIPA's priorities.") (citing SIPA § 78fff–2(c)(3)). [6] Defendants' counsel's failure to cite this and other applicable precedent in these proceedings is at minimum in derogation of her obligations to this Court.[7]

---

[4] SIPA §§ 78fff(b), 78fff-1(a);  *In re Bernard L. Madoff Inv.  Sec. LLC,* 654 F.3d 229, 231 (2d Cir. 2011), *cert. denied sub nom.* ("*Second Circuit Net Equity Decision*") ("Pursuant to SIPA, Mr. Picard has the general powers of a bankruptcy trustee, as well as additional duties, specified by the Act, related to recovering and distributing customer property.") (citing SIPA § 78fff-1).

[5] SIPA § 78fff-2(c)(3); *Second Circuit Net Equity Decision*, 654 F.3d at 242 n.10 ("SIPA and the [Bankruptcy] Code intersect to ... grant a SIPA trustee the power to avoid fraudulent transfers for the benefit of customers.") (alterations in original) (quoting *In re Bernard L. Madoff Inv. Sec. LLC,* 424 B.R. 122, 136 (Bankr. S.D.N.Y. 2010) ("*Net Equity Decision*").

[6] Defendants' counsel, Ms. Chaitman, represented the lead defendant James Greiff in this matter which addressed motions to dismiss as filed in the following actions: *Picard v. Greiff,* 11 Civ. 3775; *Picard v. Blumenthal,* 11 Civ. 4293; *Picard v. Goldman,* 11 Civ. 4959; *Picard v. Hein,* 11 Civ. 4936.

[7] *See United States v. Gaines*, 295 F.3d 293, 302 (2d Cir. 2002) (noting counsel's failure to mention a key precedent, the court directed "counsel's attention to New York's Code of Professional Responsibility, which states that '[T]he complexity of law often makes it difficult for a tribunal to be fully informed unless the pertinent law is presented by the lawyers in the cause.... Where a lawyer knows of controlling legal authority directly adverse to the position of the client, the lawyer should inform the tribunal of its existence unless the adversary has done so.'  N.Y. Lawyer's Code of Professional Responsibility EC 7–23.  The disciplinary rule associated with this ethical consideration states: 'In presenting a matter to a tribunal, a lawyer shall disclose ... [c]ontrolling legal authority known to the lawyer to be directly adverse to the position of the client and which is not disclosed by opposing counsel.'  N.Y. Comp. Codes R.

*(continued on next page)*

4

A.       **The Trustee Has Standing to Recover Customer Property**

Defendants' argument is based primarily on the erroneous position that the transfers the Trustee is seeking to avoid and recover were never BLMIS property and, as such, the Trustee cannot satisfy the injury in fact requirement of Article III standing.[8]

SIPA expressly defines "customer property" as "cash and securities … at any time received, acquired, or held by or for the account of a debtor … including property unlawfully converted." SIPA §78*lll*(4).  Moreover, SIPA provides that the Trustee can recover any property transferred by the debtor which, except for such transfer, would have been customer property to the extent such transfer is void or voidable.  *Id.* at § 78fff-2(c)(3).  For purposes of such recovery, the property so transferred shall be deemed to have been the property of the debtor.  *Id.* Through these statutory provisions, BLMIS's transfers of customer property are transfers of an interest of the debtor, the predicate for a trustee's avoidance powers.  The plain language of SIPA is clear:  the Trustee has standing to avoid and recover such transfers from the Defendants.

Well-settled case law also holds that funds transferred in furtherance of a fraudulent scheme constitute property of the estate under the Bankruptcy Code and customer property under SIPA.  *See, e.g., Rosenman Family, LLC v. Picard*, 395 F. App'x. 766, 769 (2d Cir. 2010); *Rosenman Family, LLC v. Picard*, 401 B.R. 629, 635-36 (Bankr. S.D.N.Y. 2009) (ruling that funds deposited by an investor to BLMIS's bank account at JPMorgan Chase constituted customer property); *Jobin v. Lalan (In re M&L Bus. Mach. Co., Inc.)*, 160 B.R. 851, 857 (Bankr.

---

& Regs. title 22, § 1200.37(b)(1) [DR 7–106]").  *See also Hernandez v. Jones*, No. 92 Civ. 2451, 1993 WL 323820, at \*5 n. 8 (S.D.N.Y. Aug. 6, 1993) (noting that failure to cite controlling authority "is at best inexcusably poor lawyering and at worst suggests counsel's ignorance or violation of DR 7–106(B)(1)")

[8] Article III standing is satisfied when the litigant has "suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision." *Bogart v. Israel Aerospace Indus. Ltd.*, No. 09 Civ. 4783 (LAP), 2010 WL 517582, at \*3 (S.D.N.Y. Feb. 5, 2010) (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006)).

D. Col. 1993) ("There is no argument but that the investors gave their money to the Debtor voluntarily. Thus, at the time of each investment, the Debtor had at least the legal right to possession… All that § 548 requires is the transfer of an 'interest' by the Debtor."); *see also Sender v. Buchanan (In re Hedged-Invs. Assocs., Inc.)*, 163 B.R. 841, 850 (Bankr. D. Col. 1994); *In re Ramirez Rodriguez*, 209 B.R. 424, 432 (Bankr. S.D. Tex. 1997); *Jobin v. Youth Benefits Unlimited, Inc. (In re M&L Bus. Mach. Co., Inc.)*, 59 F.3d 1078, 1081 (10th Cir. 1995); *Ivey v. Swofford (In re Whitley)*, 463 B.R. 775, 780 (Bankr. M.D.N.C. 2012).

The Defendants' argument that BLMIS never acquired title to the funds because they were stolen was also flatly rejected previously in this SIPA proceeding. In *Rosenman Family*, the appellant claimed that it was "neither a customer or general creditor because . . . the debtor never acquired title to the $10 million it wired" and "[b]ecause the money never became the debtor's property, Appellant argue[d] it cannot form part of the bankruptcy estate; rather . . . the money was stolen or embezzled." 395 Fed. Appx. at 769. However, the Second Circuit held:

> [N]one of the facts alleged in Appellant's complaint support such a conclusion, or any other conclusion that would exclude this money from the debtor's property under either New York or bankruptcy law. The $10 million was voluntarily transferred by the Appellant, was never diverted by the debtor … and remained with the debtor. Accordingly, we need not consider whether New York or bankruptcy law applies. Under either, given the allegations in the complaint, the $10 million is part of the debtor's estate.

*Id.* at 769.

In rendering its decision, the Second Circuit affirmed both the District and Bankruptcy Court's rulings that funds transferred by an investor to BLMIS's bank account at JPMorgan Chase constituted customer property and property of the estate. The Bankruptcy Court stated:

> Plaintiff's attempt to compare the circumstances surrounding the allegations in the Complaint to a thief who breaks into an individual's home and steals money is completely unfounded. Unlike the victim of a theft, Plaintiff voluntarily entrusted funds with BMIS for a purpose; namely, to purchase securities through BMIS.

6

*Rosenman*, 401 B.R. at 635, n. 10.  Because the funds at issue are property of the BLMIS estate,

the Trustee's claims are properly brought on behalf of BLMIS's estate and the Trustee has

Article III standing.[9]

Subsequently, Defendants' counsel again raised the identical argument in a brief in

support of a motion to withdraw the reference on behalf of another client in this proceeding.

However, the District Court, in declining to withdraw on that issue, stated that "SIPA and the

Bankruptcy Code work in tandem to grant the Trustee the authority to bring statutory avoidance

and recovery claims on behalf of the estate itself, see 15 U.S.C. §78fff-2(c)(3)."  *Picard v.*

*Roman*, No. 12 Civ. 2318 (JSR), 2012 WL 5816849, at *2 (S.D.N.Y. Nov. 13, 2012).  The

overwhelming weight of existing authority, including law of this case, defeats Defendants'

position on this issue.

### B.    The Doctrine of *In Pari Delicto* Has No Application

Defendants' invocation of the *in pari delicto* doctrine to contest the Trustee's standing to

bring avoidance claims relies on an inapposite line of case law where a debtor was barred from

bringing *common law claims* against *third parties*.[10]  The doctrine clearly "does not . . . apply to

causes of action that the Bankruptcy Code specifically confers on a trustee or a debtor in

possession."  *Picard v. Taylor (In re Park S. Sec., LLC)*, 326 B.R. 505, 513 (Bankr. S.D.N.Y.

2005); *see also Tese-Milner v. Beeler (In re Hampton Hotel Investors, L.P.)*, 289 B.R. 563, 580

(Bankr. S.D.N.Y. 2003) ("The rights to avoid such transfers, and to recover them for the benefit

---

[9] The Trustee is pursuing claims to recover BLMIS's property, and as such the Defendants' unsubstantiated arguments that they were not equity stakeholders in BLMIS but were creditors of the insolvent estate (*see* Motion at 16), have no relevance when it comes to standing to pursue avoidance actions. This distinction without a difference is discussed further in Section VII (B), *infra*.  Likewise, Defendants' arguments that a statute alone cannot bestow standing (*see* Motion at 16-18) miss the mark because, while SIPA grants the authority for the Trustee to pursue and recover customer property, the loss of customer property is the relevant injury required by Article III.

[10] *See* Motion at 14-15, citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972).

7

of the estate, are expressly conferred by federal law on the trustee. . . . It would be turning the *Wagoner* Rule and concepts of *in pari delicto* on their heads to hold that the trustee lacks standing to recover such payments."). This was reiterated when Defendants' counsel again raised this argument in *Picard v. Roman,* where the District Court determined:

> Although [Defendant] relies heavily on this Court's decision to withdraw the reference on issues of standing in *Picard v. HSBC Bank PLC*, 450 B.R. 406 (S.D.N.Y. 2011),[11] in fact the reasoning of that opinion cuts against [Defendant]'s motion here. There, the Court was concerned with whether SIPA—which has both bankruptcy and nonbankruptcy components—permitted the Trustee to bring common law claims—not statutory bankruptcy actions—against the defendants in that case. … [H]ere, SIPA and the Bankruptcy Code work in tandem to grant the Trustee the authority to bring statutory avoidance and recovery claims on behalf of the estate itself, *see* 15 U.S.C. §78fff-2(c)(3). . . .

2012 WL 5816849, at *2. Thus, there is no basis for the Defendants' argument that the Trustee lacks standing to bring the 128 avoidance actions.

## III.   THIS COURT HAS JURISDICTION TO ADJUDICATE THE AVOIDANCE ACTIONS

Defendants next argue that this Court lacks jurisdiction with respect to certain groups of Defendants identified on exhibits to the Motion. Once again, this issue was fully determined by multiple prior decisions of the District Court in this SIPA proceeding. Defendants misapply the District Court's holding[12] regarding the impact of *Stern v. Marshall,* 131 S. Ct. 2594 (2011), to suggest that because (i) a bankruptcy court may not have the authority to finally determine certain avoidance actions; and (ii) Defendants intend to seek to proceed by way of jury trials, the avoidance actions must be dismissed. That is incorrect both substantively and procedurally.

---

[11] In their Motion, Defendants rely on the Second Circuit decision in *Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC),* 721 F.3d 54 (2d Cir. 2013) as opposed to *Picard v. HSBC,* however the holding was the same in both cases. *See* Motion at 15.

[12] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 490 B.R. 46 (S.D.N.Y. 2013) ("*Stern v. Marshall Consol. Briefing*").

The District Court has held that section 502(d) applies in a SIPA proceeding (*see Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR) (S.D.N.Y. Feb. 12, 2013), ECF No. 435) ("*502(d) Consol. Briefing*"), and has determined that whenever the Bankruptcy Court must resolve a section 502(d) claim, it may also finally decide avoidance actions to the extent that those actions involve the same issues as the section 502(d) claim and thus would "necessarily" be resolved by it.  *See Stern v. Marshall Consol. Briefing*, 490 B.R. at 54-55.  Indeed, anytime the Trustee pursues an avoidance action against any individual and/or other entity that also filed a claim with the BLMIS estate, section 502(d) is implicated. Therefore, the Trustee's avoidance actions brought against those Defendants who also filed a claim may be finally adjudicated by this Court.  Of the 404 unique Defendants in the 128 actions represented by counsel in the Motion, 300 Defendants filed claims and are therefore subject to section 502(d).

With respect to avoidance actions where section 502(d) is not implicated because claims were not filed,[13] while a bankruptcy court might not be able to exercise the judicial power necessary to finally decide the action, it may nonetheless hear the case in the first instance and recommend proposed findings of fact and conclusions of law.  *Stern v. Marshall Consol. Briefing*, 490 B.R. at 49; s*ee also Kirschner v. Agoglia*, 476 B.R. 75, 81-82 (S.D.N.Y. 2012). This is also consistent with the amended standing order of referral of cases to the bankruptcy court which provides that:

> [i]f a bankruptcy judge or a district judge determines that entry of a final order or judgment by a bankruptcy judge would not be consistent with Article III of the

---

[13] Exhibit B to the Motion, which purports to identify 194 Defendants who did not file claims, contains extensive inaccuracies.  Exhibit B includes 105 Defendants that did in fact file 168 claims with the BLMIS estate.  A list of the claims filed on behalf of Defendants cited in Exhibit B to the Motion is attached to the Cremona Declaration as Exhibit 2.

United States Constitution … the bankruptcy judge shall … submit proposed findings of fact and conclusions of law to the district court.

Amended Standing Order of Reference, *In the Matter of Standing Order of Reference Re: Title 11*, 12 Misc. 32 (S.D.N.Y. Feb. 1, 2012).

Neither the Supreme Court's *Stern* decision, nor the District Court's interpretation of *Stern* and its application in these proceedings, provide any basis for dismissal of the Complaints due to lack of jurisdiction. Whether the Bankruptcy Court or District Court finally adjudicates these actions does not undermine the validity of the Trustee's Complaints and therefore Defendants' argument has no relevance on a motion to dismiss. For the same reasons, Defendants' reliance upon the Supreme Court's earlier decision in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) is immaterial.

Defendants assert that those identified on Exhibit B—to the extent they actually did not file claims—have a right to a jury trial and such right warrants dismissal of the Trustee's actions. *See* Motion at 21. However, to state the obvious, a right to a jury trial does not equate with a right to dismissal of an entire action. *See generally Stern v. Marshall Consol. Briefing*, 490 B.R. 46. Indeed, as the District Court previously confirmed, a party may seek withdrawal of their case to the District Court based on right to a jury trial but "only much later in the case," at a point where only issues of fact remain to be determined. *Picard v. Conn. Gen. Life Ins. Co.*, 11 Civ. 7174 (JSR), 2012 WL 1981486, at *1, n.1 (S.D.N.Y. May 30, 2012). Defendants' motion to dismiss on jurisdictional grounds should be denied.

## IV.   THERE HAS BEEN NO VIOLATION OF DEFENDANTS' CONSTITUTIONAL RIGHT TO DUE PROCESS

Defendants attack the Trustee in an attempt to manufacture a Constitutional violation. With no legitimate basis, Defendants assert that the Trustee's compensation somehow gives rise

to the possibility of bias and thus violates Defendants' right to due process of law. The argument is factually incorrect and legally unsupported.

### A.      The Trustee Is Not A Government Actor

A due process violation requires "gross" and "arbitrary" action by a governmental authority. *Rochin v. California*, 342 U.S. 165, 172 (1952) (conduct that "shocks the conscience" violates substantive due process); *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) ("the touchstone of due process is protection of the individual against arbitrary action of government") (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)).

There can be no due process violation where, as here, the Trustee is not a governmental actor. *Natale v. Town of Ridgefield*. 170 F. 3d 258, 259 (2d Cir. 1999) (only a gross abuse of governmental authority can violate the substantive standards of the due process clause). Defendants' argument that a due process violation is possible because the Trustee is a "decision-maker" for SIPC is legally and factually incorrect.

SIPC is neither a government agency nor a "quasi-governmental" agency. Indeed, SIPA specifically provides that SIPC is not "an agency or establishment of the United States Government," but was established by Congress as a "nonprofit corporation." SIPA § 78ccc(a)(1). The Trustee also is not the "decision-maker" for SIPC, but is instead an independent fiduciary appointed by the District Court pursuant to SIPA. SIPC, and trustees appointed under SIPA, can and do disagree. *See, e.g., In re Bell & Beckwith*, 93 B.R. 569 (N.D. Ohio 1988). No due process violations flow from the appointment or compensation of the Trustee.

As purported further support for their argument that the Trustee is a "quasi-governmental" figure, Defendants incorrectly claim that the Trustee was retained by the Government to assist in distributing forfeited funds to BLMIS victims under the process of

remission or mitigation.  To the contrary, the Government has retained Richard C. Breeden as special master to assist in administering the remission or mitigation process.[14]  *See* 28 C.F.R. § 9.9(c).  Mr. Breeden has no affiliation with the Trustee or Baker & Hostetler LLP.  It is the Department of Justice—not the Trustee—that will make determinations relating to the forfeiture funds, and those funds will not be distributed under SIPA.[15]  *Id.*

Defendants suggest that an impropriety stems from the Trustee making decisions on behalf of the estate and fulfilling his fiduciary duties.  However, SIPA, in conjunction with the Bankruptcy Code, obligates the Trustee to, among other things, determine customer claims, marshal estate property through the liquidation of assets, recover improperly transferred assets of the estate, and make distributions to customers and creditors with allowed claims.  *See* SIPA §§ 78fff; 78fff-1, 78fff-2, 78fff-3.  The cases relied upon by Defendants are inapposite as not one involves actions taken by a SIPA trustee.[16]  None of these cases assist Defendants in their argument.

Defendants also argue that the Trustee's "conflict of interest" is exacerbated by his position that fees incurred by his counsel are not reviewable by this Court.  However, the procedure for review and approval of fees in a SIPC liquidation is expressly mandated by SIPA,

---

[14] *See About the Special Master,* The Department of Justice Asset Forfeiture Distribution Program's Madoff Victim Fund, at http://www.madoffvictimfund.com/About_Richard_Breeden.shtml (last visited January 17, 2014).

[15] *See id.*

[16] Instead, the cases involve: (i) election contributions to a judge by a corporation likely to be appearing before him (*Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868 (2009)); (ii) whether a state medical board which investigated a doctor could also adjudicate whether the doctor's license could be suspended without a due process violation (*Withrow v. Larkin*, 421 U.S. 35 (1975)); (iii) whether a statute allowing for a trial by the mayor of a village for violations of the Prohibition Act violated due process because the fine payable upon conviction was paid to the village which could be of benefit to the mayor (*Tumey v. Ohio*, 273 U.S. 510 (1927)); and (iv) whether due process was violated when the judge presiding over an action against an insurer for failure to pay a claim had himself filed a class action against an insurance company for failure to pay claims (*Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986)).

as enacted by Congress.  Section 78eee(b)(4) provides that the Bankruptcy Court shall approve

fees once SIPC has done so.  The fact that the Trustee is acting in accordance with SIPA is not

the basis for a constitutional violation.

### B.    There Are No Procedural Due Process Concerns

There are also no procedural due process concerns related to the appointment of the

Trustee by the District Court, or the actions taken by him since that appointment.  Due process

requires adequate notice and an opportunity to be heard.  *See* U.S. Const. amend. V; *see, e.g.*,

*United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48-49 (1993); *Mullane v. Cent.*

*Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Diaz v. Paterson*, 547 F.3d 88, 95 (2d Cir.

2008); *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983).

Defendants and their counsel have been provided with notice and an opportunity to be

heard at every stage of the proceedings.  Defendants' counsel, Ms. Chaitman, on behalf of

numerous BLMIS claimants/defendants, has challenged in Article I and Article III courts

countless decisions and interpretations of law made by the Trustee thus far in the BLMIS

liquidation.[17]

---

[17] The following is a selection of matters in which Ms. Chaitman is or has been involved and in which she has filed the following documents related to this liquidation proceeding:  (i) *United States v. Madoff*, No. 09-CR-213 (DC) (S.D.N.Y.) (motion for reconsideration of District Court's determination that the Department of Justice may seek Trustee's assistance in Madoff forfeiture, denied) (ECF No. 110); (ii) *BLMIS*, Adv. Pro. No. 08-01789 (BRL) (Bankr. S.D.N.Y.) (objection to first applications of the Trustee and (Baker & Hostetler LLP ("B&H") for interim compensation, overruled) (ECF No. 351), (motion for leave to appeal of order approving first applications of Trustee and B&H for interim compensation, denied by district court) (ECF No. 366), (opposition on net equity) (ECF No. 755), (reply to SEC's brief on net equity) (ECF No. 1096), (motion for leave to appeal of order approving second applications of Trustee and B&H for interim compensation) (ECF No. 1114), (letter to Court on behalf of certain "net winners" requesting a SIPC advance of up to $500,000 in exchange for foregoing future distribution from fund of customer property) (ECF No. 1849), (appeal of Court's net equity decision) (ECF No. 2048), (objection to third applications of Trustee and B&H for interim compensation, overruled) (ECF No. 2233), (motion for leave to appeal of order approving third applications of Trustee and B&H for interim compensation, denied by district court) (ECF No. 2298), (opposition on customer motion) (ECF No. 2567), (objection to fourth applications of Trustee and B&H for interim compensation, overruled) (ECF No. 2943), (objection to avoidance action procedures motion, overruled) (ECF No. 3110), (objection to settlement approval procedures motion, overruled) (ECF No. 3111), (objection to fifth applications of Trustee and B&H for interim compensation, overruled) (ECF No. 3308), (motion for leave to appeal of order approving fifth applications of Trustee and B&H for interim compensation) (ECF No. 3593),

*(continued on next page)*

With regard to the appointment of the Trustee, due process was afforded through notice and an opportunity to be heard at the hearing on disinterestedness of the Trustee and his counsel. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. (In re Madoff)*, No. M-47, 2010 U.S. Dist. LEXIS 81492, at *16-17 (S.D.N.Y. Aug. 6, 2010) ("SIPA requires that a bankruptcy court hold a hearing for the purpose of determining disinterestedness of the trustee. Therefore, as a purely legal matter, it is beyond dispute that SIPA affords creditors due process when a trustee is appointed."). No objection was filed and no objector appeared at the disinterestedness hearing, however counsel for Defendants argued, subsequent to the disinterestedness hearing, that the Trustee was not disinterested, which argument was rejected by this Court and the District Court on multiple occasions.[18] Defendants' due process claims are meritless and their argument should be dismissed.

---

(motion to vacate Levy settlement order, denied) (ECF No. 3860), (notice of appeal of order denying motion to vacate Levy settlement order) (ECF No. 4005), (motion to compel Trustee's investigative reports and financial records, denied) (ECF No. 4045), (objection to sixth applications of the Trustee and B&H for interim compensation, overruled) (ECF No. 4088), (motion for leave to appeal of order approving sixth applications of Trustee and B&H interim compensation) (ECF No. 4088), (motion to withdraw on the Trustee's determinations that ERISA Plan claimants are not "customers" under SIPA (ECF No. 4648); (objection to motion to approve second allocation of property to the fund of customer property) (ECF No. 4966); (iii) *Peskin v. Picard*, Adv. Pro. No. 09-01272 (BRL) (Bankr. S.D.N.Y.) (suit brought against Trustee regarding, *inter alia*, net equity), on appeal at *Peskin v. Picard*, No. 09-CV-08730 (JGK) (S.D.N.Y.) (affirming bankruptcy court's ruling that, among other holdings, "the bulk of the Complaint was tantamount to an objection to the appellants' claim determinations, and thus constituted an impermissible attempt to circumvent the Claims Procedure Order."), on appeal at *Peskin v. Picard*, No. 10-04789 (2d Cir.); (iv) *Canavan v. Harbeck*, No. 10-CV-00954 (FSH) (PS) (D.N.J.) (suit against directors of SIPC); (v) *Picard v. Picower*, Adv. Pro. No. 09-1197 (BRL) (Bankr. S.D.N.Y.) (objection to Trustee's motion for entry of order approving $5 billion settlement and issuance of permanent injunction, denied) (ECF No. 32), (appeal of Court's order approving $5 billion settlement and issuing permanent injunction) (ECF No. 45); and (vi) *In re Bernard L. Madoff Inv. Sec. LLC*, No. 10-2378 (2d Cir.) (briefs and filings on net equity appeal) (ECF Nos. 202, 215, 217 and 344).

[18] *See, e.g., Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. M-47, 2010 U.S. Dist. LEXIS 3037 (S.D.N.Y. Jan. 11, 2010), *appeal denied*, 2010 U.S. Dist. LEXIS 81492 (S.D.N.Y. Aug. 6, 2010); Order Approving Applications For Allowance Of Interim Compensation For Services Rendered And Reimbursement Of Expenses, *BLMIS*, Adv. Pro. No. 08-01789 (BRL) (Bankr. S.D.N.Y.) (entered Dec. 14, 2010, ECF No. 3474).

**C.**  **Defendants Have No Basis for Arguments Related to The Trustee's Compensation**

As an initial matter, the Trustee's compensation is not relevant to his ability to perform his job and satisfy his statutorily-mandated duties.  Defendants allege that the Trustee "admitted in open court that he is compensated in the amount of a percentage of the fees paid to B&H by SIPC …. It is believed the percentage is 15%." *See* Motion at 6.  Defendants continue to shoot in the dark, without any basis for their conjecture.  In an attempt to substantiate their specious argument, Defendants cite to the transcript for the hearing held on June 1, 2011 regarding the Sixth Application of the Trustee and Baker & Hostetler LLP for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from October 1, 2010 Through January 31, 2011.  However, it is of absolutely no assistance to them because what the Trustee actually stated was:

> [I]t is objectors' counsel who has been spreading false information both in pleadings and press releases.  Counsel has been quoted in the press, as Mr. Sheehan has indicated, there was nothing in the letter that she filed yesterday that changes that.  She is way off the mark.  I don't receive any percentage near thirty-five or fifty percent and I certainly haven't received sixty to ninety million dollars since the beginning of the case.  Contrary to the allegation in counsel's letter of yesterday, I am not a decision maker for SIPC. And I am not a quasi-governmental agency or act in a quasi-governmental capacity.

*Id.* at 32:16-25, 31:1.  (A copy of the transcript is annexed hereto as Exhibit 3 to the Cremona Declaration).

Defendants further fail to bring to this Court's attention the transcript of a later hearing held before the District Court regarding the motion to withdraw the reference filed in *Picard v. Greiff*, No. 11 Civ. 3775 (JSR), wherein counsel for Defendants raised the same argument before the District Court, only to be rebuked.  The Court asked Ms. Chaitman about the basis for Defendants' allegations regarding the Trustee's fees:

**The Court:**  What is the basis for these allegations?

15

**Ms. Chaitman:**  Your Honor, the basis is that I have been informed by a personal friend of Mr. Picard that he was compensated –

**The Court:**  Who?

**Ms. Chaitman:**  A lawyer in New Jersey.

**The Court:**  Who?

**Ms. Chaitman:**  You know, unfortunately I can't remember his name, but let me finish. What happened was he told me Mr. Picard was compensated on the basis of 33 to 50 percent of the billing Baker & Hostetler collected.

**The Court:**  Did you have any other basis?

**Ms. Chaitman:** No.  When we argued –

**The Court:**  So wait a minute, let me just – forgive me for interrupting, but on the basis of some hearsay comment from someone who may or may not have had personal knowledge, and who must be so little known to you that you can't even remember his name, you made an allegation of unethical or biased approach by Mr. Picard?  That seems an awfully weak read to make such an allegation."

Tr. of Oral Argument at 12:1-25, *Picard v. Greiff*, No. 11 Civ. 3775 (JSR), July 28, 2011. (A copy of the transcript is annexed hereto as Exhibit 4 to the Cremona Declaration).   As the foregoing illustrates, Defendants' counsel cannot even settle on a consistent story when making these false allegations. The discrepancy between their assertions herein and their representations to the District Court, and the obvious absence of any support, belies the existence of any legitimate allegation.   As such, this Court should flatly disregard this argument.[19]

---

[19]  Defendants' counsel continues to make factual contentions without any support regarding the Trustee's compensation and insists on re-arguing legal issues already decided.   Such conduct has in other cases been sanctionable under Federal Rule of Civil Procedure 11.   *See e.g.*, *Business Guides, Inc. v. Chromatic Commc'n Enterprises, Inc.*, 498 U.S. 533, 541 (1991), ("A party who signs a pleading or other paper without first conducting a reasonable inquiry shall be sanctioned."); *In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 517 (2d Cir.1985) (granting sanctions against parties that filed appeal; finding the appeal to be "entirely frivolous" and "only have been brought for the purpose of delay," and that parties and their counsel "have acted vexatiously and in bad faith" and are "penalized for unnecessarily wasting our time and resources."); *Schwartz v. Nordstrom, Inc.*, No. 94 Civ. 1005 (CSH), 1994 WL 584676 (S.D.N.Y. Oct. 25, 1994) (granting sanctions where party had violated Rule 11(b) by filing pleadings for an "improper purpose," and making claims not "warranted by existing law or by a nonfrivolous argument"); *Gottlieb v. Heller*, No. 93 CIV. 3081 (LAP), 1994 WL 557092 (S.D.N.Y. Oct. 7, 1994) (granting sanctions where plaintiff and his counsel made allegations based only on suspicions and speculative opinions, and failed to make a reasonable factual inquiry as required under Rule 11).

## V.    THE CURRENT VALUE OF THE CUSTOMER PROPERTY FUND HAS NO IMPACT ON THE TRUSTEE'S ABILITY TO BRING AVOIDANCE ACTIONS

Defendants argue that the Trustee has violated SIPA § 78fff-2(c)(3) by bringing avoidance actions when he purportedly holds sufficient money in the customer property fund to satisfy all allowed claims. Defendants are incorrect. Their argument also has been rejected previously in these proceedings.

Under Defendants' reading of SIPA, the Trustee's avoidance powers would come and go depending on the value of the customer fund as measured against the amount of allowed claims as of any particular date. Such a position defies logic. To the contrary, it is well settled that the date to be used for valuation of the fund of customer property is not an arbitrary date chosen by defendants, but the SIPA filing date. *See Hill v. Spencer Sav. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.)*, 94 B.R. 817, 823 (D.N.J. 1989) (holding that "the date on which the value of the customer fund should be measured for purposes of determining the Trustee's avoidance powers under section 78fff-2(c)(3) of SIPA" is the filing date) (citing *Hill v. Spencer Sav. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.)*, 83 B.R. 880, 892 (D.N.J. 1988) ("*Bevill I*")). [20]

In the *Bevill* SIPA liquidation, defendant customers in an avoidance action argued that the Trustee should be required to prove the insufficiency of the fund of customer property for purposes of SIPA § 78fff-2(c)(3) either when an avoidance complaint was filed or when a judgment was entered. *Bevill I*, 83 B.R. at 892. The court rejected the imposition of these "enormous administrative expenses" even where there was a possibility that avoidance of a

---

[20] Defendants' only attempt to distinguish this case, the holding of which is exactly on point, is to say that the holding was erroneous. *See* Motion at 10. Given that the District Court has cited this holding with approval, (*see Picard v. Flinn Inv. LLC*, 463 B.R. 280, 284 (S.D.N.Y. 2011)), Defendants' bald assertion should be given no weight.

particular transfer was not necessary to bring the fund of customer property to 100%, finding that the "purpose of SIPA, and the responsibility of the court, is to administer the estate in a manner that benefits all customers, not just defendants in avoidance actions." *Id.* at 893. As the *Bevill* court recognized, if by the passage of time, a trustee recovered 100% of the funds necessary to satisfy all net equity claims and SIPC, a defendant in an avoidance action would receive the benefit of that recovery by asserting a claim against the estate after satisfying the avoidance action judgment. *Id.* at 891. Indeed, SIPA expressly contemplates this possibility. *See* SIPA § 78fff-2(c)(1) ("Any customer property remaining after allocation in accordance with this paragraph shall become part of the general estate of the debtor.").[21]

Thus, even if the Trustee had enough money today to satisfy customer claims (which he does not),[22] it would not impact the Trustee's ability to pursue his avoidance actions against Defendants. The amount of customer property on the Filing Date was less than $1 billion,[23] clearly insufficient to pay: (1) the amount of current allowed claims, $11.402 billion,[24] or (2) the amount of potentially allowable customer claims, $17.5 billion (the amount of principal lost by

---

[21] The Trustee notes that Defendants' counsel Ms. Chaitman represented defendant Spencer Savings & Loan Association in the *Bevil* SIPA liquidation.

[22] Defendants' argument that the Trustee can satisfy allowed claims as of today ignores the mechanics of bankruptcy law and the status of this case. It fails to account for the net loser BLMIS claimants with whom the Trustee is in litigation. Some of these defendants hold the largest claims against the estate, which are subject to section 502(d) of the Bankruptcy Code and will not be determined until the avoidance litigation is resolved. As net loser customers, upon satisfaction of their avoidance liability, they may be entitled to an allowed claim. Thus, the amount of allowed claims as of today is merely a preliminary estimate of the amount of allowable claims against the estate.

[23] *See* Trustee's First Interim Report For The Period December 11, 2008 Through June 30, 2009 at ¶¶ 33-34, 37, 40, 43-51, 57 n.7, *BLMIS*, Adv. Pro. No. 08-01789 (BRL) (Bankr. S.D.N.Y.) (ECF No. 314).

[24] See *Claims,* The Madoff Recovery Initiative, http://www.madofftrustee.com/claims-03.html (last visited January 17, 2014).

customers who filed claims).[25] Thus, the Trustee is authorized under SIPA to pursue his avoidance claims, and to the extent that he yields a 100% distribution on net equity claims—a questionably likely but decidedly positive result—defendants such as those herein may be able to assert a general estate claim and yield the benefit of the Trustee's work on behalf of all customers and the estate.

Finally, this very argument was previously raised by Defendants' counsel in support of a motion to withdraw the reference on behalf of James Greiff. The District Court, in denying the motion to withdraw the reference on this issue, stated that:

> it has long been held "that the fund of customer property shall be valued for the purposes of 15 U.S.C. §78fff-2(c)(3) as of [the filing date]," *In re Bevill, Bresler & Schulman, Inc.*, 83 B.R. 880, 898 (Bankr. D.N.J. 1988), and no "substantial and material consideration of non-Bankruptcy Code federal statutes" is required to see why this is so: any different interpretation of §78fff-2(c)(3) would cause the Trustee's powers to fluctuate, leading to a 'logistical nightmare.' *Id.* at 893. The Trustee might file a meritorious claim, but find himself unable to pursue it later for reasons wholly unrelated to the claim itself. Moreover, if the Trustee does avoid more than he needs to satisfy customer claims, SIPA provides that a recipient of an avoided transfer "shall be deemed to have been a creditor," allowing her to recover at least some of what the Trustee avoided. 15 U.S.C. § 78fff-2(c)(3).

*Picard v. Flinn Inv. LLC*, 463 B.R. at 284.

For all of the above reasons, Defendants' motion to dismiss on this ground should be denied.

## VI.   THE APPROPRIATE METHOD FOR CALCULATING DEFENDANTS' CLAWBACK EXPOSURE HAS BEEN DECIDED

In direct contravention of the final determination of the "net equity" issue in these proceedings, and the District Court's recent order regarding "antecedent debt," Defendants argue

---

[25] *See Recoveries*, The Madoff Recovery Initiative, http://www.madofftrustee.com/recoveries-04.html (last visited January 17, 2014).

that the Trustee's method of calculating Defendants' clawback exposure is improper. Defendants make the same arguments they have made before, in favor of a "replenishment" theory of recovery for certain customers, but now attempt to avoid the binding authority on this matter by asserting that prior courts did not consider the calculation in the context of the due process clause.

Setting aside the question of whether Defendants have waived the right to bring this argument by not raising it sooner despite having numerous opportunities to do so,[26] there is no basis for a due process argument. As a threshold matter, for the reasons described in Section IV *supra*, the Trustee is not a governmental actor and as such his actions cannot deprive Defendants' of their constitutional rights. In addition, even if the clause were operative, the Trustee's actions, as described below, do not come close to the "arbitrary" and "outrageous" circumstances that could legitimately give rise to such a claim. *Rochin* , 342 U.S. at 172 (conduct that "shocks the conscience" violates substantive due process); *Lewis*, 523 U.S. at 845 ("the touchstone of due process is protection of the individual against arbitrary action of government"); *Natale*, 170 F. 3d at 259 (only a gross abuse of governmental authority can violate the substantive standards of the due process clause).

This Court, the District Court, and the Second Circuit have all adopted and upheld the Trustee's Net Investment Method, and the District Court has recently confirmed that this method should also be utilized to calculate avoidance liability. *See, e.g., Second Circuit Net Equity Decision*, 654 F.3d 229; *Velvel v. Picard*, 133 S. Ct. 25 (2012), *Ryan v. Picard*, 133 S. Ct. 24 (2012); *Net Equity Decision,* 424 B.R. 122, *Greiff,* 476 B.R. 715; *Picard v. Katz*, 11 Civ. 3605

---

[26] *See supra* n. 17.

(JSR), 2012 WL 691551 (S.D.N.Y. 2012); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 499 B.R. 416 (S.D.N.Y. 2013) ("*Antecedent Debt Decision*").[27]

The Second Circuit expressly found that the Net Investment Method is the proper method for determining a customer's net equity in this case. *Second Circuit Net Equity Decision*, 654 F.3d at 235. The Court ruled that this method allows "the Trustee to make payments based on withdrawals and deposits, which can be confirmed by the debtor's books and records" in compliance with SIPA § 78fff-2(b)(2). *Id.* at 238-39. Also, the Second Circuit recognized that there is a "limited amount available for distribution from the customer property fund." *Id.* at 238 (quoting *Net Equity Decision*, 424 B.R. at 133). The Court found that restricting net equity claims to principal investment would avoid the "inequitable consequence" of allowing customers who received "imaginary profits in excess of their initial investment" to "benefit at the expense of those customers who had not withdrawn funds before the fraud was exposed." *Id.*

The *Antecedent Debt Decision* comports with the *Net Equity Decision*, in holding that the Net Investment Method, rather than the "replenishment credit method" proposed by the Defendants,[28] should apply to the Trustee's recovery of fraudulent transfers. *Antecedent Debt Decision*, 499 B.R. at 426-28 (citing *Second Circuit Net Equity Decision*, 654 F.3d at 242 n.10). In particular, the District Court held that the Trustee's "approach harmonizes the avoidance and recovery scheme with the Second Circuit's decision upholding the Trustee's net-equity calculation, even if the issue of the scope of the Trustee's avoidance power was not explicitly

---

[27] Defendants' counsel was one of the lead counsel and fully participated in the consolidated briefing on the "Antecedent Debt" issues before the District Court, and the *Antecedent Debt Decision* squarely disposes of this issue.

[28] According to the "replenishment credit method" adopted by Defendants, only withdrawals made during the two-year period, less deposits made within the two-year period, would be recoverable. *See* Motion at 23.

before the Second Circuit in that case." *Id.* at 428 (citing *Second Circuit Net Equity Decision,* 654 F.3d at 242 n. 10).[29]

The District Court specifically considered and rejected the "replenishment credit method" asserted here again by Defendants.   In again asking this Court to implement this approach, Defendants are seeking to transform Madoff's decades-long Ponzi scheme into a mere two-year fraud, effectively wiping the slate clean of Defendants' liability as of December 11, 2006.   This approach is designed solely to minimize Defendants' avoidance liability.

The District Court held that Defendants mischaracterized the impact of the Net Investment Method by arguing that the Trustee's approach improperly circumvented the statutory reach-back period to recover time-barred withdrawals by applying deposits made during the reach back period against withdrawals made beyond the reach back period.   Instead, the District Court found that while section 548(a)(1) allows the Trustee to avoid only those transfers made in the two years before the filing date, there is no similar limitation in section 548(c) with respect to whether a transfer is given for value.   *Antecedent Debt Decision*, 499 B.R. at 427.   The District Court noted the distinction between the concept of harm to the estate and the concept of reach-back periods.   *Id.*   The District Court also observed that when calculating net equity claims, defendants were given credit for principal invested before the reach-back period and not withdrawn.   The Court stated that "it makes little sense to draw a boundary at the

---

[29] Similarly, in *Greiff*, the District Court stated:

> As for the calculation of how much the Trustee may recover under these claims, the Court adopts the two-step approach set forth in *Donell v. Kowell*, 533 F.3d 762, 771-72 (9th Cir. 2008).   First, amounts transferred by Madoff Securities to a given defendant at any time are netted against the amounts invested by that defendant in Madoff Securities at any time.   Second, if the amount transferred to the defendant exceeds the amount invested, the Trustee may recover these net profits from that defendant to the extent that such monies were transferred to that defendant in the two years prior to Madoff Securities' filing for bankruptcy.

*Greiff*, 476 B.R. at 729.

beginning of the reach-back period for purposes of recovery but not for purposes of net-equity claims." *Id.* (*citing Donell*, 533 F.3d at 773-74). The Court also determined that Defendants' approach was untenable because it could not satisfy the SIPA mandate to treat all customers equitably. Under the replenishment theory, those customers who continued to transfer principal to BLMIS in the two-year period would be the only customers to benefit. It would unfairly provide them with a windfall based solely on the timing of their investments at the expense of all other customers.

In sum, the District Court concluded that "a straight netting method—subtracting total withdrawals from total deposits of principal—is the appropriate way to calculate not only net equity but also a defendant's fraudulent-transfer liability." *Id.* at 430. The District Court also disposed of Defendants' argument that utilizing the Net Investment Method would allow the Trustee a double recovery, stating that "[t]o the extent that defendants assert that the Net Investment Method allows the Trustee to obtain a 'double recovery' of transfers, that is only a concern so long as one accepts the premise that the estate is fixed as of the beginning of the reach-back period, which the Court does not." *Id.* at 427 n.8. This holding disposes of the Defendants' argument in its entirety and Defendants should not be permitted to now take another bite at the apple. [30]

## VII.    THE PONZI SCHEME PRESUMPTION IS APPLICABLE IN THIS CASE

One of the more incredulous assertions found in Defendants' pleading is the claim that BLMIS was not a Ponzi scheme. Despite numerous decisions finding otherwise, Defendants persist in making this argument that has no basis in law. Defendants also suggest, contrary to

---

[30] Defendants also recycle a related argument regarding account transfers, asserting that the Trustee's failure to give Defendants full credit for inter-account transfers of fictitious profits prior to December 11, 2006, deprives them of the value those transfers. In deciding the antecedent debt issues, the District Court rejected the argument for the same reasons it rejected the replenishment credit method. *Antecedent Debt Decision*, 499 B.R. at 429.

settled authority, that the Ponzi scheme presumption should only apply to transfers to equity investors.  There is no legal or logical basis for this assertion.  And even if that were not the case, this issue is not ripe for consideration on a motion to dismiss.

### A.      BLMIS Was A Ponzi Scheme

As this Court and the District Court have determined on numerous occasions, the breadth and notoriety of the Madoff Ponzi scheme leave no basis for disputing the application of the Ponzi scheme presumption to the facts of this case, particularly in light of Madoff's criminal admission.  *See e.g., Picard v. Chais*, 445 B.R. 206 (Bankr. S.D.N.Y. 2011); *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317 (Bankr. S.D.N.Y. 2011); *Picard v. Peter Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87 (Bankr. S.D.N.Y. 2011) ("*Family Action*"); *Picard v. Merkin*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010); *see also Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011); *Picard v. Merkin*, No. 11 MC 0012 (KMW), 2011 WL 3897970 (S.D.N.Y. Aug. 31, 2011).  As this Court has observed, Madoff perpetrated an "infamous Ponzi scheme" for decades.  *Merkin*, 440 B.R. at 249.  The summary judgment decision recently issued in *Gowan v. Amaranth Advisors L.L.C. et al. (In re Dreier LLP)*, Adv. Pro. No. 10-03493 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014) is readily distinguishable as the trustee, Sheila M. Gowan, failed to proffer any admissible evidence, including any expert testimony in support.[31]  In fact, the *Dreier* court even quoted directly from the *Family Action* decision, recognizing that there was no basis to dispute the application of the Ponzi scheme presumption to the facts of the case, particularly in light of Madoff's criminal admission.  *Id.* at *12 citing *Family Action*, 458 B.R. at 104.  Despite the weight of binding authority on this point, Defendants persist in claiming that

---

[31] Notwithstanding the overwhelming recognition of the existence of a Ponzi scheme in the Madoff case, the Trustee has retained an expert who will provide a report and testimony as to the clear existence of the Ponzi scheme perpetrated by BLMIS at the appropriate time in these cases.

24

the Trustee is not entitled to the Ponzi presumption because "BLMIS was not a Ponzi scheme."
*See* Motion at 26.

In an attempt to demonstrate that BLMIS was not a Ponzi scheme, Defendants assert that
they have a "smoking gun"—a purported trade confirmation ticket produced by the Trustee
confirming actual trades by BLMIS. *See* Motion, Exhibit 5. This document is not, in fact, a
trade ticket but merely a preliminary screen shot or "print screen" from the Bloomberg system.
Closer examination of the document shows that in the upper left hand corner of the document, it
states that the user should "Enter <1><GO> to send screen via <MESSAGE> System." There is
at least one additional step the user would have to have taken to complete that trade
electronically. The additional step was not taken. Furthermore, the "print screen" was created
on 10/7/2003 and related to a purported transaction that allegedly occurred in excess of eight
months prior. The maturity date for this alleged trade of treasury securities, 3/27/2003, is over
six months prior to the date the document was printed. Defendants' Exhibit 5 is neither a trade
confirmation nor proof of any transaction—it merely shows that a BLMIS representative
reviewed the pricing history for a security after the fact. This fact is neither surprising nor
inconsistent with the Madoff Ponzi scheme. Defendants' mere conclusory statement and single,
discredited "smoking gun" example is insufficient to rebut the Ponzi scheme presumption. *See,
e.g., Merkin,* 440 B.R. at 255 ("The breadth and notoriety of the Madoff Ponzi scheme leave no
basis for disputing the application of the Ponzi scheme presumption to the facts of this case.").

Finally, the Trustee has asserted in the Complaint that the investment advisory business of BLMIS, with which the Defendants were invested, operated as a Ponzi scheme.  Thus, for purposes of a motion to dismiss, this fact must be accepted as true.[32]

**B.    The Ponzi Presumption is Not Limited to Distributions of Equity**

Faced with well-settled law directly contradicting their position, Defendants nonetheless repeat here the unsustainable theory that the Ponzi scheme presumption only extends to distributions made to equity stakeholders of the debtor and not to creditors of the insolvent estate.  Relying on the "distinction" between investors and customers of a brokerage firm, Defendants try to extricate themselves from the wealth of controlling authority holding that transfers to a Ponzi scheme investor beyond the principal investment are not made for value. Defendants' attempt is futile.

Courts have universally held that where a Ponzi scheme exists, transfers made by a Ponzi entity are presumed to have been made by the debtor with the "actual intent to hinder, delay, or defraud."   11 U.S.C. § 548(a)(1)(A); *see also Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 11 (S.D.N.Y. 2007) ("[T]he Ponzi scheme presumption remains the law of this Circuit . . . ."); *Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2006) (finding that a debtor operating a Ponzi scheme is presumed to have made transfers with fraudulent intent); *Bayou Superfund LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp., LLC),* 362 B.R. 624, 633–34 (Bankr. S.D.N.Y. 2007) (same); *Gowan v. Patriot Grp., LLC (In re Dreier LLP)*, 452 B.R. 391, 435 (Bankr. S.D.N.Y. 2011) (Ponzi scheme presumption also applies to claims brought under N.Y. Debt. & Cred. Law § 276).  Thus, where

---

[32] In reviewing a motion to dismiss, a court "must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *In re J.P. Jeanneret Assocs.*, 769 F. Supp. 2d at 353 (citing *Cargo Partner AG*, 352 F.3d at 44); *see also Twombly*, 550 U.S. at 572.

an entity functioned as a Ponzi scheme, as a matter of law, transfers from the entity were made with the requisite fraudulent intent. *Cohmad*, 454 B.R. at 330 ("[T]he fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law by virtue of the 'Ponzi scheme presumption.'"); *McHale v. Boulder Capital LLC (In re 1031 Tax Grp. LLC)*, 439 B.R. 47, 72 (Bankr. S.D.N.Y. 2010) ("If the Ponzi scheme presumption applies, actual intent for purposes of section 548(a)(1)(A) is established 'as a matter of law.'"). Regardless of how transferees are labeled—as customer-creditors or equity stakeholders—the salient inquiry here is whether the transferee gave value for a transfer made with fraudulent intent.

Second, Defendants cite no legal authority for treating debt and equity investors differently. In fact, the District Court has already called this a "distinction without a difference," *Greiff*, 476 B.R. at 726, finding it irrelevant to the analysis of whether value was provided in the context of section 548(c). Not only do Defendants ignore the District Court's holding, they disregard the substantial body of case law that equates equity holders with creditors for purposes of avoidance. *See, e.g.*, *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC)*, 439 B.R. 284, 298 (S.D.N.Y. 2010); *Barclay v. Mackenzie (In re AFI Holding, Inc.)*, 525 F.3d 700, 708-09 (9th Cir. 2008) (equity investors in partnership provided reasonably equivalent value for principal investment only); *Dillon v. Axxsys Int'l, Inc.*, 185 F. App'x 823, 830 (11th Cir. 2006) (shareholders who were fraudulently induced to invest "clearly became 'creditors'" under the Florida Uniform Fraudulent Transfer Act); *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995) (defrauded limited partners were also "creditors" for purposes of the Illinois fraudulent transfer statute because they were "tort creditors of the corporations from which they had been deceived into buying limited-partner interests"); *Drenis*, 452 F. Supp. 2d at 428 (finding that limited partners with equity interests in partnership were also "creditors" under

27

the N.Y. Debt. & Cred. Law because of their "claims against the defrauding defendants"); *In re Int'l Mgmt. Assocs., LLC*, No. A06-62966-PWB, 2009 WL 6506657, at \*10 (Bankr. N.D. Ga. Dec. 1, 2009) (concluding that the debtors received "value" for transfers to an investor up to the amount of principal invested "regardless of whether the investment, in form, is debt or equity"). Again, the Trustee urges the Court to reject this frivolous argument.

## VIII.   THE COMPLAINTS DO NOT VIOLATE NEW YORK PUBLIC POLICY OR STATE LAW

Defendants' assertions that the Complaints violate public policy are not new and are, in fact, copied almost verbatim, from a reply brief filed by Defendants' counsel in support of a failed motion to dismiss before the District Court.  *See* Greiff's Reply Memorandum of Law in Further Support of Motion to Dismiss the Complaint, *Picard v. Greiff,* No. 11 Civ. 3775 (JSR) (S.D.N.Y. Nov. 1, 2011), ECF No. 34.[33]

Defendants again assert that the determination of property rights in a bankruptcy proceeding is governed by state law and attempt to rely on state law principles to reduce amounts owed to the estate.  Defendants rely heavily on the Supreme Court ruling in *Butner v. United States*, 440 U.S. 48, 55 (1979) for support.  However, the District Court, in ruling on the *Greiff* motion to dismiss, made clear that movants misconstrued the *Butner* ruling, which actually held that "state law need not apply if 'some federal interest requires a different result.'"  *Greiff,* 476 B.R. at 724 (citing *Butner,* 440 U.S. at 55); s*ee also In re Dreier LLP,* 429 B.R. 112, 125 (Bankr. S.D.N.Y. 2010) (finding state law or other applicable non-bankruptcy law normally determines

---

[33] These arguments were similarly raised by certain of the Defendants and others, but rejected by the District Court in the Antecedent Debt briefing, where the Defendants argued that the Bankruptcy Code did not override their state law claims.  Defendants' counsel, Ms. Chaitman, served as one of the lead counsel and was a signatory on the moving papers.  *See* Consolidated Memorandum of Law in Support of Motion to Dismiss Regarding Antecedent Debt Issues on Behalf of Withdrawal Defendants, As Ordered By the Court on May 12, 2012*, Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* No. 12 Misc. 0115 (JSR) (S.D.N.Y. June 25, 2012), ECF No. 199 *("Antecedent Debt Consol. Briefing")*; *Antecedent Debt Decision,* 499 B.R. 416 (S.D.N.Y. 2013).

the extent of the debtor's interest in property, absent an overriding federal policy; bankruptcy law determines whether that interest is property of the estate). Even the New York Uniform Commercial Code ("UCC"), the state law so heavily relied upon by Defendants for their arguments, acknowledges that both the Bankruptcy Code and SIPA override the UCC if the entity's affairs are being administered in an insolvency proceeding. *See* U.C.C. § 8-503, cmt.1 (2009) ("applicable insolvency law governs how the various parties having claims against the firm are treated. For example, the distributional rules for stockbroker liquidation proceedings under the Bankruptcy Code and Securities Investor Protection Act . . . provide that all customer property is distributed pro rata among all customers"). Moreover, any purported reliance on state law is preempted under the Supremacy Clause of the United States Constitution.[34]

Similarly, in ruling on the Antecedent Debt motion to dismiss, the District Court once again rejected Defendants' arguments, finding that "to effectuate SIPA's mandate, a customer may only seek the protections of section 548(c) to the extent of investments of principal, and federal and state law claims cannot be used to increase the amount to which a customer is entitled from the customer property estate." *Antecedent Debt Decision,* 499 B.R. at 425-26.

It is disingenuous of Defendants to maintain this argument because they fully participated in two prior briefings before the District Court that addressed these identical issues, and given that the District Court's recent decisions completely dispose of these issues.

Defendants' allegations of purported violations of "New York public policy" are unsubstantiated and are not a basis for dismissal of the Trustee's claims.

---

[34] *See* U.S. Const., art. VI, cl. 2; *First Fed. Sav. & Loan Ass'n of Lincoln v. Bevill, Bresler & Schulman, Inc. (In re Bevill, Bresler & Schulman, Inc.)*, 59 B.R. 353, 378 (D.N.J. 1986), *appeal dismissed*, 802 F.2d 445 (3d Cir. 1986) (holding that any state law that is inconsistent with SIPA is preempted under the Supremacy Clause); *see also Am. Sur. Co. of N.Y. v. Sampsell*, 327 U.S. 269, 272 (1946) ("[F]ederal bankruptcy law, not state law, governs the distribution of a bankrupt's assets to his creditors.").

IX.    **THE TRUSTEE MAY BRING CLAIMS TO AVOID OBLIGATIONS**

Defendants posit several bases on which they assert the Trustee cannot seek to avoid obligations, contrary to the plain language of the Bankruptcy Code and the *Antecedent Debt Decision*.  Defendants fail to provide this Court with any persuasive ground to dismiss these claims under Rule 12(b).

### A.    SIPA Authorizes the Trustee to Avoid Obligations, and the Trustee Has Adequately Pleaded the Obligations to be Avoided

Of the 128 Complaints covered by this Motion, only five contain counts which seek to avoid "obligations" under the Trustee's prescribed avoidance powers.[35]

SIPA authorizes the Trustee to avoid these obligations pursuant to applicable provisions of SIPA, including § 78fff(b) which grants the Trustee authority to conduct a SIPA liquidation proceeding "to the extent consistent with [SIPA] . . . in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of title 11." *See also* SIPA § 78fff-1(a) (giving a SIPA trustee the powers of a bankruptcy trustee that enable him to perform the special functions of a SIPA liquidator).  SIPA § 78fff-2(c)(3) also explicitly incorporates the Bankruptcy Code, thus authorizing the Trustee to avoid any obligations incurred under sections 544 and 548 of the Code.  As the Second Circuit recently confirmed, "a SIPA trustee's authority to bring claims in administering a SIPA liquidation is coextensive with the powers of a Title 11 bankruptcy trustee." *Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, No 12-1645-bk(L), 2014 WL 103988, at *4 n.8 (2d Cir. Jan 13, 2014).

---

[35] These consist of the following five actions: *Picard v. The Harnick Brothers P'nship*, Adv. Pro. No. 10-05157, *Picard v. Irene Whitman 1990 Trust U/A/ DTD 4/13/90*, Adv. Pro. No. 10-05196, *Picard v. The Estate of Nathan Schupak*, Adv. Pro. No. 10-01706, *Picard v. RAR Entrepreneurial Fund, Ltd*, Adv. Pro. No. 10-04352, *Picard v. Joseph S. Popkin Rev. Trust Dated February 9, 2006*, Adv. Pro. No. 10-04712.

Section 548(a) of the Bankruptcy Code expressly provides that the Trustee may avoid obligations incurred by the debtor, as it states:

> The trustee may avoid any transfer . . . of an interest of the debtor in property, or *any obligation . . . incurred by the debtor*, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such transfer or obligation.

11 U.S.C. § 548(a)(1) (emphasis added); *see also* 5 COLLIER ON BANKRUPTCY ¶ 548.03[4] (16th ed. 2013) ("Section 548 not only gives the estate representative the power to avoid transfers, but also the power to avoid obligations."). The Trustee is also given this authority pursuant to section 544 of the Bankruptcy Code, which states "[t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable [by a creditor]." *See* 11 U.S.C. § 544(a). Applicable state law, the New York Debtor & Creditor Law, provides for the avoidance of "every conveyance made and *every obligation* incurred . . . ." N.Y. Debt. & Cred. Law §§ 273, 275, 276 (emphasis added). Nothing in SIPA is inconsistent with this authority. *See* SIPA § 78fff(b).

Furthermore, the Complaints adequately plead (1) the obligations incurred by BLMIS, (2) the occurrence of obligations within two years of filing, (3) the insolvency of BLMIS, and (4) that BLMIS did not receive any value for any obligations relating to fictitious profits. *See* 11 U.S.C. § 548; *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535 (1994). The Trustee has adequately pleaded the obligations to be avoided.

### B.   Defendants Cannot Rely On Inconsistent State and Federal Law to Reduce Their Liabilities to the BLMIS Estate

Defendants, unable to argue that they can rely on BLMIS statements in an attempt to reduce the avoidance liability owed to the Trustee, attempt instead to argue that the Trustee

cannot avoid obligations that arise "by operation of federal and state statutes, regulations, and laws." *See* Motion at 32.

As previously explained in Section VIII above, however, Defendants cannot rely on federal and state law to "increase the amount to which a customer is entitled from the customer property estate." *Antecedent Debt Decision,* 499 B.R. at 426. Even if the defendants may have had state and federal causes of action against BLMIS (which the Trustee does not concede), the statute of limitations at a minimum has run for those claims under section 10b of the Securities Exchange Act of 1934 and SEC Rule 10b-5. *See Domenikos v. Roth*, 288 F. App'x 718, 720 (2d Cir. 2008) ("Section 804(b) of [the Sarbanes-Oxley Act of 2002] extended the limitations period [set by the Exchange Act § 10b and SEC Rule 10b-5] for securities fraud actions to the lesser of two years from discovery of the fraud or five years from the date of the fraud."); *Sedona Corp. v. Ladenburg Thalman & Co.*, No. 03 Civ. 3120 (LTS), 2005 WL 1902780, at *7 (S.D.N.Y. Aug. 9, 2005) (stating that pursuant to section 804(b) of the Sarbanes-Oxley Act of 2002 "a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of … [federal] securities laws . . . may be brought not later than the earlier of (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation"). In any event, any such claims would be claims against any general BLMIS estate, not against the customer property fund. *See Antecedent Debt Decision,* 499 B.R. at 425.

### C.      Avoiding Obligations is Entirely Consistent With the Trustee's Ability to Avoid Transfers

Defendants' claims that the Trustee cannot avoid obligations incurred before the statutory reach-back period, or obligations already satisfied by BLMIS based on Defendants' fictitious statements, are without merit. BLMIS's fabricated monthly statements do not entitle the Defendants to the fictitious securities listed on those statements. *Second Circuit Net Equity*

*Decision*, 654 F.3d at 235.  Indeed, the District Court effectively rejected any reliance on the

fictitious account statements in *Greiff*, 476 B.R. at 728, n.12 (concluding "that defendants'

customer statements do not entitle [defendants] to § 548(c)'s affirmative defense").

Furthermore, Defendants' assertion that the Complaints "apparently seek to avoid all

obligations BLMIS incurred over the life of the customer-broker relationship," is incorrect (*see*

Motion at 34), as the Trustee is seeking to avoid obligations in the same manner as he seeks to

avoid transfers, which approach has been approved by this Court, the District Court and the

Second Circuit.  The avoidance of any purported obligations, and the avoidance of related

transfers, are two sides of the same coin.

There is no basis to dismiss the Trustee's counts to avoid obligations as pleaded in the

relevant amended Complaints.

## X.    THE TRUSTEE HAS ADEQUATELY PLEADED HIS CLAIMS IN COMPLAINTS WITH MULTIPLE ACCOUNTS

Defendants argue that those Complaints in which the Trustee sues purportedly "unrelated

accounts" must be dismissed because SIPA provides that "a customer who holds accounts with

the debtor in separate capacities shall be deemed to be a different customer in each capacity."

*See* Motion at 35, *citing* SIPA § 78fff-3.

However, Defendants' reliance on this provision of SIPA as a basis for dismissal is

wholly unfounded because the provision addresses a customer's qualification for a SIPA advance

if holding multiple accounts in different capacities.  It has nothing at all to do with pleading

standards for filing avoidance complaints in a SIPA liquidation.  Indeed, Defendants provide no

rules, statutes, or legal authority that states that the Trustee must file separate complaints for each

and every account held by an individual and/or entity, simply because each account may be

viewed to be held by a different customer for purposes of distribution of SIPC funds.

This is not surprising because the Trustee has followed normal pleading conventions, and in the interest of judicial efficiency and conservation of resources, has tried to include accounts relating to one individual, trust, partnership, limited liability company, or any other entity within a combined complaint to the extent possible where the entities, issues involved, and discovery may be related or connected.[36]  The fact that claims relating to more than one account have been combined in a single count is also a common pleading convention.  Doing so does not violate SIPA nor cause confusion regarding the nature of claim the Trustee is asserting, nor is it in any way violative of the Federal Rules of Civil Procedure.  This is not a basis for dismissal.

## XI.    THE TRUSTEE HAS ADEQUATELY PLEADED HIS SUBSEQUENT TRANSFER CLAIMS

Defendants next argue that Complaints containing counts seeking to recover subsequent transfers should be dismissed for pleading shortcomings.

As an initial matter, Defendants have failed to demonstrate how the Trustee's pleading is insufficient.  Indeed, Defendants neglect to even identify Complaints that involve subsequent transferee defendants and fail to demonstrate how, in each case, the Trustee has failed to adequately plead his claims.  Defendants have not met their burden, and their arguments should be rejected.

### A.    The Trustee has Adequately Pleaded his Subsequent Transfer Claims

Contrary to Defendants' arguments, the Complaints adequately plead the Trustee's right to avoid and recover funds transferred by BLMIS to initial transferee defendants, and then, where applicable, funds thereafter transferred to subsequent transferee defendants.

---

[36] *See e.g., The Whitman Partnership,* Adv. Pro. No. 10-04610; *Picard v. Melvin H. and Leona Gale Joint Revocable Living Trust U/A/D 1/4/94,* Adv. Pro. No. 10-04993*; JABA Assocs. LP, Adv. Pro. No. 10-05128; Picard v. Palmer Family Trust,* Adv. Pro. No. 10-05151.

As this Court previously held, Rule 8 of the Federal Rules of Civil Procedure ("Rule 8")
applies in determining whether the Trustee has sufficiently pleaded his claim to recover
fraudulent transfers from subsequent transferees. *See* Fed. R. Civ. P. 8; *Merkin*, 440 B.R. at 243
(finding that the Court "need only apply a Rule 8 analysis" to determine "whether a claim to
recover fraudulent transfers from a subsequent transferee is adequately pled."). In *Merkin,* this
Court found that the Trustee's subsequent transfer claims satisfied Rule 8. The Trustee met his
burden where the initial transfers were set forth in an exhibit "specifying the dates upon which
they took place, the method of transfer, the transferor, and the specific transferees," and the
Trustee has pleaded on information and belief that some or all of those transfers were
subsequently transferred by the initial transferees directly or indirectly to the subsequent
transferees. *Merkin*, 440 B.R. at 269–70.

A trustee's burden is simply to "demonstrate 'sufficient facts to show, if proved, that the
funds at issue originated with the debtor'"—dollar-for-dollar tracing is not required. *Chais*, 445
B.R. at 235; *see also Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.,* 234 B.R. 293, 317–18
(Bankr. S.D.N.Y. 1999) ("recovery under § 550(a) is not subject to a particularized pleading
standard"). A trustee simply has to "adequately apprise[]" the defendants "of which transactions
are claimed to be fraudulent and why, when they took place, how they were executed and by
whom." *Stratton Oakmont*, 234 B.R. at 318; *see also Merkin*, 440 B.R. at 270; *Silverman v.
K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30-31 (Bankr. E.D.N.Y. 2007);
*Scheidelman v. Henderson (In re Henderson),* 423 B.R. 598, 612 (Bankr. N.D.N.Y. 2010) (the
purpose of this pleading requirement is to ensure that the defendant receives "fair notice of what
the . . . claim is and the grounds upon which it rests.") (quoting *Twombly*, 550 U.S. at 555). As
such, the Trustee must provide only a "short and plain statement of the claim showing that [he] is

35

entitled to relief." Rule 8(a)(2).  Stated plainly, the Trustee must "identif[y] relevant pathways" through which the funds flowed.  *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs.,Inc.)*, 408 F.3d 689, 709 (11th Cir. 2005).  In addition, as this Court has acknowledged, the Trustee has a reduced burden with respect to pleading subsequent transfer claims because he has no first-hand knowledge regarding the transfers.  *See Chais*, 445 B.R. at 236 (acknowledging the difficulties faced by the Trustee, including that the Trustee "is an outsider to these transactions and will need discovery to identify the specific Subsequent Transfers by date, amount and the manner in which they were effected") (internal quotation marks omitted).

Defendants argue that the Trustee's subsequent transfer allegations here are similar to those alleged in the initial complaint filed in the Family Action.  *See* Family Action*,* Adv. Pro. No. 08–01789 (Bankr. S.D.N.Y. Oct. 2, 2009), ECF No. 1.  There, the initial complaint "merely allege[d] that '[o]n information and belief, some or all the transfers were subsequently transferred by one or more [of the Defendants] to another Family Defendant, either directly or indirectly' without providing any sort of estimate of the amount of the purported Subsequent Transfer, or when or how such Transfer occurred."  *Family Action,* 458 B.R. at 119 (alterations in original).  These allegations have since been amended and expanded.

The Complaints in question here contain sufficient information to satisfy the standard set out by this Court in *Merkin*.  In fact, the relevant Complaints' allegations and exhibits set forth the precise manner in which funds that originated with specific BLMIS accounts were transferred to the initial transferee defendants (including dates and amounts), and provides the amount of transfers, some or all of which were then transferred to one or more subsequent transferee defendants.

36

In addition, contrary to the cases relied upon by Defendants, the 128 actions here do not involve complex transactions with a tangled web of individuals and/or entities, and/or multiple BLMIS accounts.   Instead, these are clear-cut avoidance actions that involve basic initial transfers to a BLMIS account opened in the name of an individual, family trust, joint tenancy, or a retirement plan, from which, in numerous instances, subsequent transfers were then made to family members and friends.   It is in the interest of judicial efficiency to consolidate in each Complaint all initial transferee defendants and subsequent transferee defendants to the extent known to address shared issues and engage in common discovery and litigation.

The Trustee's Complaints with respect to subsequent transfers are adequately pleaded and should not be dismissed on this basis.   Defendants' complete failure to meet their burden also warrants disregard of their argument.

## B.    Subsequent Transferees Have all Available Defenses Under the Bankruptcy Code and Applicable Law

Defendants also argue that the Trustee "attempts to bypass the protections afforded subsequent transferees by pleading that they are also beneficiaries of the initial transfer," thus barring subsequent transferees from utilizing available defenses under section 550(b) provided they took for value, in good faith, and without knowledge of the voidability of the initial transfer. *See* Motion at 39.

This assertion is misleading and incorrect because the Trustee has not sought to convert subsequent transferees into initial transferees.   In the Complaints, it is clear that the subsequent transferee defendants are considered just that—subsequent transferee defendants.    The subsequent transferee defendants are afforded all rights provided to them by the Bankruptcy Code.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)* (No. 12 Misc. 115 (JSR), 2013 WL 5813881, at *2 (S.D.N.Y. Oct. 28, 2013) ("550(a) Consol. Briefing").

37

If, during litigation, it is determined that the initial fraudulent transfers were actually "for the benefit of" the defendants identified as subsequent transferees, only then would such defendants be liable equally with an initial transferee, as provided under the Bankruptcy Code. *See e.g., Jacobs v. State Bank of Long Island (In re AppOnline.com, Inc.)*, 296 B.R. 602, 622-23 (Bankr. E.D.N.Y. 2003) (finding that the "the 'initial transferees' of the checks that cleared . . . are the payees of those checks. They are the ones who received something of value. . . ."). Defendants' long exposition of the defenses available to subsequent as opposed to initial transferees is not relevant.  The Trustee is not precluded from pleading in the alternative.

There is no basis for Defendants' allegations that the Trustee has engaged in trickery in his pleading of subsequent transferee defendants.  Moreover, the Defendants' subsequent transferee allegations are not an appropriate basis for dismissal.

## XII.    THE TRUSTEE'S DISALLOWANCE OF CLAIMS IS NOT INCONSISTENT WITH SIPA

Defendants argue that section 502(d), as applied by the Trustee to disallow claims involving "different accounts held by different customers," or claims from BLMIS accounts held by the same named individual and/or entity, but not subject to avoidance, is inconsistent with SIPA and must be dismissed.  *See* Motion at 41.  However, this argument falls flat because Defendants rely wholly on a SIPA provision (SIPA §§ 78fff) involving the distribution of SIPA advances—not the disallowance of claims—and ignore the plain language and purpose of section 502(d).  Indeed, section 502(d) explicitly mandates the disallowance of a defendant's claims, as it prevents the transferee of an avoidable transfer from receiving any distribution unless he first returns the transfer.

The very purpose of section 502(d) is to "preclude entities that have received voidable transfers from sharing in the distribution of assets unless and until the voidable transfer has been

returned to the estate." *Chais,* 445 B.R. at 239 (quoting *In re Mid Atl. Fund, Inc.*, 60 B.R. 604, 609 (Bankr. S.D.N.Y. 1986)); *see also Duffy v. Futter (In re Futter Lumber Corp.)*, No. 09-73291-478, 2011 Bankr. LEXIS 5024, at *18 (Bankr. E.D.N.Y. Nov. 8, 2011) ("[Section 502(d) provides a mechanism that enables a trustee to recover assets of the estate from a recipient of an avoidable transfer, unless the claimant has paid or turned over property that is the subject of the turnover or avoidance."). In other words, so long as the sued entity retains fraudulently transferred property subject to avoidance, that same entity is not eligible to receive distributions from the estate, even from other accounts not subject to avoidance.

Here, the Trustee brought claims against 404 unique defendants in 128 actions for the receipt of fraudulent transfers which are avoidable and recoverable under sections 548, 550, 551 of the Code. None of the Defendants in the 128 actions has returned their fraudulent transfers to the Trustee. Thus, section 502(d) clearly applies to *any* claims filed by such defendants— whether or not they involve BLMIS accounts subject to avoidance—as they have failed to repay or turn over property recoverable under sections 548, 550, and 551 of the Code. *See, e.g., In re Asia Global Crossing, Ltd.*, 333 B.R. 199, 202 (Bankr. S.D.N.Y. 2005) (stating that "[s]ection 502(d) prevents the transferee of an avoidable transfer from receiving a distribution . . . unless he first returns the transfer").

Defendants further assert that no court has yet determined this particular issue where the claim sought to be disallowed was in connection with an account different from the one in which the fraudulent transfers occurred. However, in numerous rulings, both the Bankruptcy Court and District Court found that the Trustee sufficiently pleaded his claims to disallow the defendants' SIPA claims under section 502(d) of the Bankruptcy Code, which included customer claims that involved BLMIS accounts *not* subject to avoidance. *See e.g., Chais,* 445 B.R. at 239; *Cohmad,*

454 B.R. at 341; *Family Action,* 458 B.R. at 120-21 (all finding that the Trustee sufficiently pleaded to disallow all SIPA claims filed by defendants).  Accordingly, the Trustee has pleaded a legal basis for disallowing defendants' SIPA claims, and the motions to dismiss this Count should be denied.

## XIII.  THE TRUSTEE CAN AVOID TRANSFERS FROM ACCOUNTS HELD IN THE NAME OF AN IRREVOCABLE TRUST

Once again, though Defendants' arguments failed to gain any traction before the District Court, they put forth recycled arguments before this Court, apparently hoping for a different result.  Defendants assert that section 5205 of the N.Y. C.P.L.R. protects irrevocable trusts from the reach of the Trustee because such trusts are included among the categories of personal property specifically protected from judgment creditors' claims. *See* Motion at 42-43.[37] Defendants also argue that section 5205(c)(5), which provides that the exemption does not apply to "[a]dditions to" the trusts that are "fraudulent conveyances," is inapplicable here because the District Court  determined that the Trustee cannot pursue state law claims.

Defendants cannot have it both ways.  They cannot claim that section 5205(c)—which is a state law—acts as a safe harbor for irrevocable trusts, and then simultaneously insist that the exception for fraudulent conveyances under section 5205(c)(5) should be entirely disregarded. The fact that the District Court ruled that the Trustee may not pursue state law claims in his avoidance actions does not undermine the Trustee's authority to avoid or recover BLMIS property as expressly provided by the Bankruptcy Code under section 548.  At most, the irrevocable trust issue would be relevant to the Trustee's recovery of an avoided transfer, but

---

[37] Section 5205(c) specifically states in relevant part, "[A]ll property while held in trust for a judgment debtor, where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor, is exempt from application to the satisfaction of a money judgment." N.Y. C.P.L.R. § 5205(c).

even then the fraudulent transfer exception would operate to deny the protection Defendants seek.

To avoid the operation of the exception, Defendants allege that it applies only to "additions" to the account, and that such "additions" could only be made by the customer. However, Defendants ignore the basis of the Trustee's litigation—all "additions" beyond the Defendants' principal investment were "fraudulent conveyances" made by Madoff using money that was stolen from other investors.  The money "added" by Madoff was the very fictitious profits that the Defendants thereafter withdrew.[38]  These illegal transfers are not protected from avoidance by the Trustee.  As the District Court ruled, "where Madoff Securities fraudulently transferred profits into [Defendants' BLMIS accounts], distributions of those profits are *not protected by § 5205(d)(1)*." *Greiff*, 476 B.R. at 728, n.13 (emphasis added).

To rebut this, Defendants insist that "withdrawals" as opposed to "additions" by the customer are purportedly not covered by the section 5205(c)(5) exception, and therefore cannot be avoided by the Trustee.  *See* Motion at 43.  This argument ignores the fact that section 5205(d)(1) exempts withdrawals from trusts *only* where "the principal ... is exempt under subdivision (c)." *Greiff*, 476 B.R. at 728, n.13.  All withdrawals beyond the Defendants' principal investment are "fraudulent conveyances" that are subject to avoidance and recovery by the Trustee.

---

[38] The District Court noted that "[s]ince Madoff Securities apparently did not segregate customer accounts as it claimed to do . . . additions to and distributions from [the trusts] occurred simultaneously in the form of payment to the transferee." *Greiff*, 476 B.R. at 728, n.13 (citing Decl. of Joseph Looby ¶ 18).

XIV.    **THE TRUSTEE'S AVOIDANCE ACTIONS AGAINST CHARITABLE TRUSTS DO NOT VIOLATE THE RELIGIOUS LIBERTY AND CHARITABLE DONATION ACT OF 1998**

Defendants assert that the Trustee's actions seeking to avoid fraudulent transfers made to certain charitable trust defendants violate the free exercise of religion. *See* Motion at 44-45. This argument is wholly frivolous.   As Defendants explain it, the Religious Liberty and Charitable Donation Act of 1998 ("RLCDA") amended section 548(a)(2) of the Bankruptcy Code to state that a transfer to a religious or charitable organization cannot be avoided where the amount is below fifteen percent of the debtor's gross annual income, or if exceeding such income, if the transfer is consistent with the debtor's practice of making charitable donations. *Id.* at 44.

It is evident from the language of the amendment and the face of Defendants' brief that this measure was taken to protect charitable donations made by U.S. citizens who have declared bankruptcy.  *See e.g., Universal Church v. Geltzer,* 463 F.3d 218 (2d Cir. 2006) (addressing a bankruptcy trustee's efforts to avoid debtor's transfers to the Universal Church).   It is also clear that the relevant Defendants were not recipients of charitable donations, but rather investors within BLMIS, just like every other customer.   Defendants fail to cite even a single legal authority to support these arguments.[39]  Finally, the frivolity of this argument is made more obvious by the explicit provision in the Bankruptcy Code stating that the charitable contribution exception only applies to donations made by a natural person, which BLMIS clearly is not. *See* 11 U.S.C. §§ 548(a)(2); 548(d)(3)(A).   This portion of the motion to dismiss should also be denied.

---

[39] Defendants' reference to the Trustee's settlement with Jeanne Levy-Church and Francis Levy, the heirs of Madoff co-conspirator, Norman Levy, is not evidence that the Trustee considered or recognized the principles of the RLCDA, nor was there any reference to the RLCDA in the settlement agreement. *See In re Bernard L. Madoff*, No. 08-01789, ECF No. 1833, ¶12 (Bankr. S.D.N.Y. Jan. 27, 2010).

## CONCLUSION

Defendants have failed to meet their burden on the Motion. For the reasons discussed above, the Trustee respectfully requests that Defendants' Motion be denied in its entirety.


Date:    January 17, 2014                    By: */s/ David J. Sheehan*
             New York, New York

                                                    **BAKER & HOSTETLER LLP**
                                                    45 Rockefeller Plaza
                                                    New York, New York 10111
                                                    Telephone: (212) 589-4200
                                                    Facsimile: (212) 589-4201
                                                    David J. Sheehan
                                                    Email: dsheehan@bakerlaw.com
                                                    Nicholas J. Cremona
                                                    Email: ncremona@bakerlaw.com
                                                    Keith R. Murphy
                                                    Email: kmurphy@bakerlaw.com
                                                    Amy E. Vanderwal
                                                    Email: avanderwal@bakerlaw.com
                                                    Anat Maytal
                                                    Email: amaytal@bakerlaw.com

                                                    *Attorneys for Irving H. Picard, Trustee for the*
                                                    *Substantively Consolidated SIPA Liquidation*
                                                    *of Bernard L. Madoff Investment Securities*
                                                    *LLC and the estate of Bernard L. Madoff*


*As to the following actions:*                By: */s/ Howard L. Simon*

*Picard v. Robert Yaffe*, Adv. Pro. No. 10-    **WINDELS MARX LANE &**
04380                                          **MITTENDORF, LLP**
                                               156 West 56th Street
*Picard v. David Abel*, Adv. Pro. No. 10-04381    New York, New York 10019
                                               Telephone: (212) 237-1000
*Picard v. Triangle Properties #39, et al.*, Adv.    Facsimile: (212) 262-1215
Pro. No. 10-04406                              Howard L. Simon
                                               Email: hsimon@windelsmarx.com
*Picard v. Judith Rechler, et al.*, Adv. Pro. No.    Kim M. Longo
10-04412                                       Email: klongo@windelsmarx.com

*Picard v. Roger Rechler Revocable Trust, et*

*al.*, Adv. Pro. No. 10-04474

*Picard v. Bevro Realty Corp. Defined Benefit
Pension Plan, et al.*, Adv. Pro. No. 10-05051

*Picard v. Reckson Generation, et al.*, Adv. Pro.
No. 10-05135

*Picard v. Bert Brodsky Associates, Inc.
Pension Plan, et al.*, Adv. Pro. No. 10-05148

*Picard v. Stanley I. Lehrer, et al.*,
Adv. Pro. No. 10-05259
(as to Eunice Chervony Lehrer only)

*Picard v. Realty Negotiators Defined Benefit
Pension Plan, et al.*, Adv. Pro. No. 10-05438

*Special Counsel to Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the estate of Bernard L.
Madoff*

# Appendix A

| APN | Defendant |
| --- | --- |
| 10-04292 | Robert Roman |
| 10-04302 | Joan Roman |
| 10-04303 | Kenneth Robert Cutroneo, et al. |
| 10-04305 | DAVID SHAPIRO,, et al. |
| 10-04306 | Angela Tilentnick |
| 10-04314 | David Shapiro Nominee Nominee #3 |
| 10-04321 | Herbert Barbanel, et al. |
| 10-04324 | Barbara Roth, et al. |
| 10-04325 | David Shapiro Nominee #2 |
| 10-04327 | Gertrude E. Alpern Revocable Trust, et al. |
| 10-04328 | David Shapiro Nominee |
| 10-04344 | Alexander Sirotkin |
| 10-04352 | RAR Entrepreneurial Fund LTD, et al. |
| 10-04362 | Sage Associates, et al. |
| 10-04367 | Benjamin T. Heller |
| 10-04380 | Robert Yaffe, et al. |
| 10-04381 | David Abel |
| 10-04391 | Yesod Fund, a trust, et al. |
| 10-04397 | Fern C. Palmer Revocable Trust Dtd 12/31/9, et al. |
| 10-04400 | Sage Realty, et al. |
| 10-04406 | Triangle Properties # 39, Robert Yaffe, et al. |
| 10-04412 | Judith Rechler |
| 10-04425 | Manuel O. Jaffe |
| 10-04428 | Allen Meisels |
| 10-04434 | Trust U/W/O Morris Weintraub FBO Audrey Weintraub, et al. |
| 10-04438 | Estate of Seymour Epstein, et al. |
| 10-04446 | Trust Dated 12/6/99 Walter and Eugenie Kissinger, et al. |
| 10-04469 | Carol L. Kamenstein, individually and in her capacity as joint tenant |
| 10-04474 | Roger Rechler Revocable Trust, et al. |
| 10-04487 | Robert Weintraub, et al. |
| 10-04489 | Marlene Krauss |
| 10-04491 | Elaine Dine Living Trust dated 5/12/06, et al. |
| 10-04503 | Judd Robbins |
| 10-04539 | The Gerald and Barbara Keller Family Trust, et al. |
| 10-04541 | Kenneth W Perlman, et al. |
| 10-04545 | Jerome Goodman, Individually, as trustee for The Jerome Goodman Child |
| 10-04562 | Robert F. Ferber |
| 10-04570 | Jacob M. Dick Rev Living Trust DTD 4/6/01, et al. |
| 10-04599 | Alvin E. Shulman |
| 10-04606 | Florence W. Shulman |
| 10-04610 | The Whitman Partnership, et al. |
| 10-04614 | Robert S. Whitman |
| 10-04621 | Donald A. Benjamin |
| 10-04633 | Richard S. Poland |
| 10-04644 | Russell L. Dusek, |
| 10-04648 | Peter D. Kamenstein |
| 10-04660 | P.B. Robco Inc. |
| 10-04667 | David Gross, et al. |
| 10-04668 | Timothy Shawn Teufel and Valerie Ann Teufel Family Trust, et al. |
| 10-04680 | Chalek Associates LLC, et al. |
| 10-04682 | James M Garten |
| 10-04694 | Clothmasters, Inc. |
| 10-04709 | Andrew M. Goodman |
| 10-04712 | Joseph S. Popkin Revocable Trust Dated February 9, 2006, a Florida Tr |
| 10-04718 | The Jordan H. Kart Revocable Trust, et al. |
| 10-04728 | Bruno L. Digiulian |
| 10-04733 | J.Z. Personal Trust, et al. |

| | |
|---|---|
| 10-04740 | Robert Hirsch, as an individual, and as joint tenant, et al. |
| 10-04748 | Murray Horowitz, et al. |
| 10-04749 | Philip F. Palmedo |
| 10-04750 | Samdia Family L.P., a Delaware Limited Partnership, et al. |
| 10-04752 | Kuntzman Family LLC, et al. |
| 10-04753 | Carla Ginsburg |
| 10-04762 | James M. Goodman |
| 10-04768 | Placon2, William R. Cohen, et al. |
| 10-04781 | Estate of Irene Schwartz, et al. |
| 10-04786 | Edwin Michalove |
| 10-04803 | The Estelle Harwood Family Limited Partnership, et al. |
| 10-04806 | Kenneth M.Kohl, as an individual and as a joint tenant, et al. |
| 10-04809 | Allen Gordon |
| 10-04812 | Shari Block Jason |
| 10-04818 | Toby Harwood |
| 10-04823 | Frank DiFazio, et al. |
| 10-04826 | Boyer Palmer |
| 10-04837 | Leslie Ehrlich f/k/a Leslie Harwood , et al. |
| 10-04852 | Alvin E. Shulman Pourover Trust, et al. |
| 10-04859 | Bert Margolies Trust, et al. |
| 10-04867 | Estate of Steven I. Harnick, et al. |
| 10-04876 | Marie S. Rautenberg |
| 10-04884 | Steven Andelman |
| 10-04889 | Robert S. Savin |
| 10-04905 | Train Klan, a Partnership, et al. |
| 10-04912 | Harry Smith Revocable Living Trust, et al. |
| 10-04914 | Allen Gordon |
| 10-04916 | Susan Andelman |
| 10-04920 | Glenhaven Limited, et al. |
| 10-04956 | D. M. Castelli |
| 10-04961 | Sylvan Associates LLC f/k/a Sylvan Associates Ltd Partnership, et al. |
| 10-04979 | James M. New Trust dtd 3/19/01, et al. |
| 10-04991 | Guiducci Family Limited Partnership, et al. |
| 10-04993 | Melvin H. and Leona Gale Joint Revocable Living Trust, et al. |
| 10-04995 | Trust U/Art Fourt O/W/O Israel Wilenitz, et al. |
| 10-05026 | Walter Freshman Trust A, a Florida trust, et al. |
| 10-05032 | Marvin Kirsten, et al. |
| 10-05037 | Barbara L. Savin |
| 10-05041 | Marilyn Turk Revocable Trust, et al. |
| 10-05051 | Bevro Realty Corp. Defined Benefit Pension Plan, et al. |
| 10-05064 | The Celeste & Adam Bartos Charitable Trust, et al. |
| 10-05079 | Estate of James M. Goodman, et al. |
| 10-05102 | Robert A. Benjamin, et al. |
| 10-05104 | The Gloria Albert Sandler and Maurice Sandler Revocable Living Trust |
| 10-05105 | Robert C. Luker Family Partnership, et al. |
| 10-05106 | Stony Brook Foundation, Inc. |
| 10-05116 | Leonard J. Oguss Trust, et al. |
| 10-05124 | The Lawrence J. Ryan and Theresa R. Ryan Revocable Living Trust, et al. |
| 10-05127 | Atwood Management Profit Sharing Plan & Trust, etc., et al. |
| 10-05128 | JABA Associates LP, et al. |
| 10-05133 | Boyer H. Palmer, individually, etc, et al. |
| 10-05135 | Reckson Generation, et al. |
| 10-05148 | Bert Brodsky Associates, Inc. Pension Plan, et al. |
| 10-05150 | Plafsky Family LLC Retirement Plan, Robert Plafsky, et al. |
| 10-05151 | Palmer Family Trust,etc., et al. |
| 10-05154 | Blue Bell Lumber and Moulding Company, Inc. Profit Sharing Plan |
| 10-05157 | The Harnick Brothers Partnership, et al. |
| 10-05184 | Laura Ann Smith Revocable Living Trust, et al |
| 10-05190 | The Lazarus-Schy Family Partnership, etc., et al |
| 10-05196 | Whitman 1990 Trust U/A DTD 4/13/90, etc., et al |
| 10-05217 | Edward I. Speer, et al |
| 10-05232 | Trust for the benefit of Ryan Tavlin, et al. |

| | |
|---|---|
| 10-05259 | Stanley I. Lehrer, individually, et al. |
| 10-05309 | William Pressman, Inc., et al. |
| 10-05312 | Doron Tavlin Trust U/A 2/4/91, et al. |
| 10-05377 | Richard G. Eaton |
| 10-05420 | Gunther K. Unflat, et al. |
| 10-05435 | Keith Schaffer, et al. |
| 10-05438 | Realty Negotiators Inc. Defined Benefit Pension Plan, et al. |
| 10-05443 | Brad Wechsler |
| 12-01706 | Estate of Nathan Schupak |