**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Keith R. Murphy
Nicholas J. Cremona
Edward J. Jacobs

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and for the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>             Plaintiff-Applicant,<br><br>             v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>             Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>             Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>             Plaintiff,<br><br>             v.<br><br>TRUST U/ART FOURTH O/W/O ISRAEL WILENITZ, EVELYN BEREZIN WILENITZ, individually, and as Trustee and Beneficiary of the | Adv. Pro. No. 10-04995 (SMB) |

Trust U/ART Fourth O/W/O Israel Wilenitz, and
SARA SEIMS, as Trustee of the Trust U/ART
Fourth O/WO Israel Wilenitz,

                Defendants.

**DECLARATION OF EDWARD J. JACOBS IN SUPPORT OF THE TRUSTEE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL AND IN SUPPORT OF THE TRUSTEE'S CROSS-MOTION FOR A PROTECTIVE ORDER**

    EDWARD J. JACOBS hereby declares as follows:

    1.    I am a member of the New York Bar and a partner at Baker & Hostetler LLP, counsel for plaintiff Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.*, and the estate of Bernard L. Madoff.

    2.    As an attorney of record in these proceedings, I am fully familiar with the facts set forth herein based either upon my own personal knowledge or upon information conveyed to me by the Trustee's consultants that I believe to be true.

    3.    I make this Declaration in support of the Trustee's Memorandum in Opposition to Defendants' Motion to Compel and in Support of the Trustee's Cross-Motion for a Protective Order in order to provide the Court with a detailed description of the Trustee's discovery practices and protocols across the "good faith" adversary proceedings, and to further attest to the specific documents that have been produced and/or made available to the specific defendants in this case. A true and correct copy of Trustee Irving H. Picard's Responses and Objections to Defendant's Document Demands and Interrogatories that is the subject of these motions is attached hereto as **Exhibit A**.

    4.    During the course of the Trustee's investigation following the discovery of the BLMIS fraud, the Trustee took custody of thousands of boxes of paper—enough paper to stretch

2

from New York to Los Angeles and back—and unquantified amounts of electronically stored data. Ultimately the Trustee and his consultants processed approximately 4.7 million hard-copy BLMIS documents and 25 million BLMIS electronic documents, which were then incorporated into the common E-Discovery document review platform, Relativity, referred to by the Trustee as the "BLMIS Searchable Database." The Trustee does not provide direct access to the BLMIS Searchable Database to every defendant, given that it contains significant amounts of irrelevant personally identifiable information ("PII"). From this database, however, and consistent with the Court's Order Establishing Litigation Case Management Procedures for Avoidance Actions, which permits parties to "produce discovery, including initial disclosures, . . . in an electronic data room," *see Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Nov. 10, 2010), ECF No. 3141 (the "Procedures Order"), the Trustee created E-Data Room 1—a separate document review database in Relativity containing approximately four million documents (all of which the Trustee's team reviewed and redacted for PII) relevant to the fraud at and insolvency of BLMIS, including certain additional documents from third parties. In addition to segregating this massive collection of documents of significance across all cases, the Trustee also isolated account-specific and defendant-specific records and began affirmatively producing these records in connection with the Trustee's initial disclosures in the respective adversary proceedings.

  5. At the outset of the Liquidation, the Trustee identified and segregated BLMIS core account documents for all customers ("Core Account Documents"). These Core Account Documents typically include a customer account file which is comprised of account opening agreements, correspondence to and from BLMIS, transfer and/or redemption requests, customer statements, Portfolio Management Reports ("PMRs"), and/or Portfolio Management Transaction

3

Reports (PMTs"), which contain transaction history, and other documents that were specific to each account, and/or relevant to the Trustee's calculation of net equity of a particular BLMIS account.

6. The Trustee produces the Core Account Documents for both the subject account and any related account. An account is considered a related account if it is relevant to the net-equity calculation of the subject account. Specifically, as will be further explained by the Trustee's testifying experts in their respective reports, if the subject account received any direct or indirect "transfers" from another account, the net equity of that "transferor" account is implicated, and thus the Trustee also produces the Core Account Documents for that related account. In addition to the Core Account Documents, the Trustee also identified and segregated BLMIS bank account records that reflect transfers from BLMIS to the specific customers for the subject account ("Bank Transfer Documents" and together with the Core Account Documents, the "Initial Disclosure Documents").

7. For both the Core Account Documents and Bank Transfer Documents, the Trustee produced detailed appendices that provide document-by-document descriptions of each document in the Initial Disclosure Documents. A true and correct copy of the appendices is attached hereto as **Exhibit B**. These are provided purely as a courtesy to defendants in an effort to aid them in their review of the case-specific materials produced by the Trustee. The appendices enable defendants to know precisely what types of documents they have received and are reviewing, and identify with specificity the documents supporting the Trustee's transfer and net equity allegations for each defendant as detailed in Exhibit B to the Trustee's complaint.

8. In the *Wilenitz* case, consistent with the Trustee's protocols across all adversary proceedings, the Trustee affirmatively produced the Core Account Documents and the Bank

4

Transfer Documents to the Defendants in connection with his initial disclosures on April 1, 2016. A true and correct copy of the Trustee's March 31, 2016 letter is attached hereto as **Exhibit C**.

9. The Trustee produced the Core Account Documents for the subject accounts (account nos. 1CM806 and 1CM837) and related accounts (account nos. 1C0000, 1C0007, 1CM188, and 1CM807)—*i.e.*, accounts that affect the principal balance calculation of the subject account. The appendices for the *Wilenitz* Initial Disclosure Documents were included with the production.

10. As noted above, pursuant to the Procedures Order, the Trustee provides defendants with direct access to approximately four million documents through E-Data Room 1. Though referred to as a "data room," E-Data Room 1 is the equivalent of a full-scale document production that the litigants access through the commonly used document review platform, Relativity.

11. The Trustee provides counsel with two platforms in order to search for, review, and produce documents from E-Data Room 1. The first platform is a web-based platform referred to as the Madoff Trustee E-Data Room 1 Proof of Fraud and Insolvency Information Portal (the "Information Portal"), which enables counsel to request E-Data Room 1 user credentials directly from the hosting vendor using a two-step process, and later request production of documents from the hosting vendor. The Information Portal not only provides counsel with a history of their requests, but also provides a timeline for completion of requests and allows counsel to submit technical questions or issues relating to the Information Portal or E-Data Room 1. The second platform is the document review database, E-Data Room 1, which counsel will receive access to within two business days of making a request through the Information Portal. Once E-Data Room 1 credentials are issued, counsel is automatically

5

notified via email and can access E-Data Room 1 to search for, review and tag documents for production immediately. Once counsel has identified their document production population and tagged them accordingly in E-Data Room 1, counsel will then access the Information Portal and submit a request of those documents by using another two-step process. Defense counsel receives production within three to five business days from the date of request. As such, the roughly four million documents in E-Data Room 1 are available for defendants to access as soon as possible after discovery opens.

12.     The Trustee discloses the existence and availability of E-Data Room 1 in his initial disclosures for every adversary proceeding, and defense counsel are provided with credentials necessary to access E-Data Room 1 upon execution of the Undertaking and Consent to be Bound by the Litigation Protective Order ("LPO Undertaking") and the E-Data Room 1 Non-Disclosure Agreement (E-Data Room 1 NDA"). A true and correct copy of the Trustee's Initial Disclosures, dated December 21, 2015 is attached hereto as **Exhibit D**. As such, immediately after discovery opens, the Trustee makes available roughly four million documents in E-Data Room 1 for defendants to access once they submit the executed LPO Undertaking and the E-Data Room 1 NDA.

13.     The Trustee adds documents to E-Data Room 1 when it is determined that they might be relevant to all actions. For example, when Ms. Chaitman requested production of all records received in the Bankruptcy Rule 2004 investigation from the Depository Trust Clearing Corporation, the Trustee added those documents to E-Data Room 1 after production to Ms. Chaitman. Documents loaded into E-Data Room 1 within the last 90 days can be found in four folders: (i) Released within the last 30 Days; (ii) Released within the last 60 Days; (iii) Released within the last 90 Days, and (iv) Released within post 90 Days to assist counsel in identifying

6

new documents.

14. Once the credentials are issued, the Trustee provides defense counsel with an E-Data Room 1 manual (the "Manual"), which is a roadmap of the structure, organization, and contents of E-Data Room 1 to aid defendants in their navigation of it.  A true and correct copy of the Manual is attached hereto as **Exhibit E**.  In addition to the Manual, the Trustee provides defense counsel with a tailored E-Data Room 1 Relativity manual ("E-Data Room 1 Relativity Quick Guide") to offer a step-by-step guide for navigating, searching, and tagging documents for review and/or production.  A true and correct copy of the E-Data Room 1 Relativity Quick Guide is attached hereto as **Exhibit F**.  When the defendants request documents that are housed in E-Data Room 1, the Trustee notes in his responses and objections to the requests that the documents are located therein.  The Trustee also provides an additional appendix with his responses and objections to discovery requests which further details the high-level contents of E-Data Room 1 and includes screen shots of the interface.  A true and correct copy of this appendix is attached hereto as **Exhibit G**.

15. Moreover, given the discovery disputes raised by Defendants in these specific adversary proceedings, the Trustee recently made an early production of the Dubinsky Report, including a "Documents considered list" that provides Bates-labeled documents that are available in E-Data Room 1, and provided another detailed description of E-Data Room 1 in the accompanying cover letter.  A true and correct copy of the Trustee's September 26, 2016 letter is attached hereto as **Exhibit H**.

16. As to its specific contents, E-Data Room 1 is organized in folders and subfolders under three main primary folders—**DATA**, **DOCUMENTS**, and **FINANCIALS**.

17. The documents contained in the DATA folders contain data extracted from the

data sources that BLMIS maintained over the decades. The DATA folder is further divided into two sub-folders—**Account Statements and Ledgers** and **StorQM 1099 Forms**—and contains copies of reports and some "near-native" data obtained from the data sources.

18. The **Account Statements and Ledgers** sub-folder contains customer statements, ledgers, and reports for BLMIS accounts, which are organized into further sub-folders based on the data source from which the documents were uploaded to E-Data Room 1 — microfilm, SETCHS17, STMTPro, or StorQM. To the extent defendants' Requests seek information contained in the customer statements of accountholders other than the defendant in this adversary proceeding, that information is contained in this sub-folder.

19. The **Microfilm** sub-folder contains customer statements and ledgers from 1978 through November 1995. Before implementing the AS400 computer system in the 1990s, BLMIS used predecessor systems (*e.g.*, IBM System 36) to generate account statements, and thus the statements in this sub-folder were sourced from the microfilm reels of these predecessor systems. Generally, each reel contained labeling that gave an indication of what types of reports were contained on the reel. Using the label information, a subset of the microfilm reels and the reports contained therein were identified for processing and Bates numbering. Customer account statements and other reports related to customer accounts identified on the microfilm reels are available in this folder.

20. The **SETCSH17** sub-folder contains SETCSH17 reports generated from BLMIS monthly backup tapes containing the SETCSH17 table. SETCSH17 (also referred to as "Settled Cash" for House 17) is a data table maintained in the House 17 AS400 computer that contains transactional customer activity used to generate customer account statements. BLMIS archived this table on a monthly basis, purging the transactional data from the AS400 computer system

8

after the archiving was completed, to preserve storage space. The SETCSH17 tables maintained on backup tapes were identified and restored. The SETCSH17 reports in this sub-folder are presented in PDF format and contain all transactions for the applicable account number, organized by month. Microsoft Excel files that were prepared from the extracted SETCSH17 are also available in this folder.

21. The **STMTPro** sub-folder contains customer statements created using the StatementPro system from 1996 onward. The STMTPro is a proprietary AS400 add-on application developed by BLMIS programmers to create BLMIS customer statements outside the normal monthly processing of customer statements. Restored customer statements using the custom STMTPro program are available in this sub-folder to the extent the STMTPro tapes have been restored and processed. Many of the STMTPro tapes were stored with paper indices ("tape wrappers") that provide selected information such as dates and account numbers. To the extent available, copies of the scanned tape wrappers are located in this folder.

22. The **StorQM** sub-folder contains customer statements created using the StorQM application on the AS400, which is a report-writing application used to generate various reports. The customer statements available in this folder are from December 1995 through November 2008.

23. The separate **StorQM 1099 Forms** sub-folder contains IRS 1099 forms that were generated by the StorQM application on the AS400 from December 1995 onward.

24. The DOCUMENTS folders contain electronic copies of hard copy documents collected from BLMIS facilities or obtained from third parties. These documents are organized by source, then by type of document/data. The bulk of the information responsive to Defendants' requests for information related to BLMIS's purported trading activities and its

9

insolvency are contained in this section. The sub-folders and specific documents contained therein include:

- **BLMIS Documents and Work Papers**: This sub-folder includes various documents, notes, and papers created and maintained by BLMIS throughout its existence, including all pages from 21 spiral notebooks maintained by employee Jodi Crupi tracking cash-in and cash-out transactions. This sub-folder further includes documents related to BLMIS's liquidity timeline, including letters from employees Dan Bonventre and Enrica Cotellessa-Pitz regarding loans to BLMIS using its JPMorgan & Chase account as collateral.

- **BLMIS Operational Documents**: This sub-folder includes documents related to BLMIS's corporate structure and related organizational activities.

- **FINRA**: This sub-folder includes various documents related to FINRA, including BLMIS's quarterly FOCUS Reports from 1983 through 2007, as well as accompanying data for the reports and audit materials provided by FINRA from the late 1990s onward, which further include FINRA questionnaires and document requests completed by BLMIS.

- **MSIL Documents and Work Papers**: This sub-folder includes various records from Madoff Securities International Limited ("MSIL"), including corporate structure and organizational documents, shareholder resolutions, financial statements, and tax returns.

- **Other Public Documents**: This sub-folder folder contains certain publicly available documents, including pleas from the criminal trials of certain BLMIS employees.

- **Other Third Party Documents**: This sub-folder folder contains additional third-

party documents, most of which were produced in the Trustee's Bankruptcy Rule 2004 investigation, that relate to BLMIS's legitimate and illegitimate trading activities, including information on specific transactions. The third-party documents are organized in sub-folders as follows :

- **DTCC**: contains various records related to the Depository Trust and Clearing Corporation, including BLMIS's records from an account maintained with the DTCC, reports, statements, notices, confirmations, and other documents related to BLMIS trading activity through BLMIS's proprietary Trading and Market Making business units; also includes documents obtained from the leased DTCC terminal at BLMIS.

- **Daily Stock Records (DSR)**: contains various historical stock records, including pages from the New York Stock Exchange Daily Stock Price Record.

- **Friehling & Horowitz**: contains various records related to purported accounting services provided by Friehling & Horowitz for BLMIS.

- **OCC**: contains documents produced by Options Clearing Corporation, including various documents related to trading transactions and activity and Madoff Position Summary Reports.

- **SEC**: contains U.S. Securities and Exchange Commission-related materials, including publicly available documents and certain documents received from the SEC. The documents received from the SEC include certain filings made by BLMIS, including ADV forms, FOCUS reports, and year-end reports.

- Documents from various trading exchanges.

11

25. The FINANCIALS folders contain documents obtained from various third-party institutions related to the financial condition of BLMIS and MSIL. As with the DATA and DOCUMENTS described above, there are numerous sub-folders labeled according to document source. Generally, the documents in these sub-folders are statements and related documents for accounts BLMIS or MSIL held with the specific entity reflected in the sub-folder label.

26. In addition to folder trees, users can locate documents by type, as explained in the Manual, or through key word searches powered by the most up-to-date technology available from the makers of Relativity. A user can also search in the data stored in fields, such as Bank Account Number, BLMIS Account Number, and Bank Account Holder Name. Other usable fields and related descriptions can be found at the end of the Manual.

27. As a user is reviewing documents in E-Data Room 1, the user can request documents for traditional production by clicking on the "Edit" box that appears next to each document and then clicking on the tag that marks it for production. The documents in E-Data Room 1 are not "downloadable" (which is one of Defendants' complaints) because of security and privacy concerns, given the large number of users. Rather, the list of documents tagged by a defendant for production is sent to the Trustee's vendor, which prepares the production for the defendant. This way, the Trustee's vendor can keep track of where these documents go and the parties can track which specific documents have been produced in any particular case.

28. The Trustee's records show that defense counsel has not executed the LPO Undertaking or the E-Data Room 1 NDA for the *Wilenitz* adversary proceeding, and therefore has not received credentials to search E-Data Room 1 in *Wilenitz*. As noted above, the Trustee must be able to track the production of documents from E-Data Room 1 by case, which is why the E-Data Room 1 NDA is required to be executed on a case-by-case basis. Had counsel for the

12

Defendants accessed E-Data Room 1, they would have identified materials concerning the subject matter of certain Requests. For example, Request No. 13 seeks a list of BLMIS Proprietary Trading employees, which is in E-Data Room 1. Without waiving any objections, the Trustee re-produced that list, in addition to other documents that were already made available in E-Data Room 1. Defendants ultimately did not move to compel a response to Request No. 13. Since the Trustee already has incurred significant costs associated with the creation of E-Data Room 1, which is specifically intended to avoid the need to re-produce the same materials over and over across multiple cases, it is not reasonable for Defendants to refuse to utilize the materials already made available to them pursuant to a Court Order.

29. True and correct copies of the two customer claims, submitted by Ms. Wilenitz and received by the Trustee on June 26, 2009 are attached hereto as **Exhibit I**. This exhibit has been redacted for personally identifiable information.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing statements made by me are true and correct.

Dated: New York, New York
October 14, 2016

*/s/ Edward J. Jacobs*
Edward J. Jacobs